**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Terry DRAPER, Defendant–Appellant.**

**Nos. 88–5933, 88–5947.**

United States Court of Appeals,
Sixth Circuit.

Submitted Aug. 1, 1989.

Decided Nov. 2, 1989.

---

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty., Office of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

William B. Seligstein, Wagerman & Seligstein, Memphis, Tenn., for defendant-appellant.

Before WELLFORD and NELSON, Circuit Judges, and TAYLOR, District Judge *.

ANNA DIGGS TAYLOR, District Judge.

Appellant Draper was convicted by a jury of aiding and abetting codefendant William Conard in the possession with intent to distribute cocaine, a schedule II

* Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

controlled substance, in violation of 21 U.S.C. § 841(a)(1). He was acquitted of the second count of the indictment, which charged the commission of a drug trafficking crime while armed, in violation of 18 U.S.C. § 924(c). Draper was later sentenced to a term of forty-two months of incarceration and three years of supervised release, which District Judge Julia Gibbons found appropriate both under the then new Sentencing Guidelines Act, 28 U.S.C. § 994, being within the Guideline range, as well as appropriate in the exercise of her pre-Guideline discretion.

## I.

On appeal, Draper challenges the sufficiency of the evidence, claims error in the cross-examination of a defense witness concerning her prior kidnapping charge against him, and argues that the sentence was excessively severe. We affirm.

On December 22, 1987, Special Agent Gary Michael Rowell, of the Drug Enforcement Administration (DEA), was introduced to William Conard by a confidential informant, Sasser, who had advised that Conrad was selling cocaine. Acting in an undercover capacity, Agent Rowell attempted to purchase a quantity of cocaine from Conard in his home at 1052 Willett in Memphis, Tennessee. Although a price of $1,400.00 per ounce was discussed, Conard apparently was unable to contact his source. Conard then instructed Agent Rowell and Sasser to return later to complete the deal. When they did return to the house later that same afternoon, Conard was successful in reaching his source and, approximately forty minutes later, a car door was heard to slam and Conard said to the waiting agent, "he is here now." Both Agent Rowell and Sasser were then asked to wait in another part of the house while Conard left the room to greet the unseen visitor. Moments later, Conard brought them a plastic bag which, undisputedly, contained cocaine. Agent Rowell then paid Conard for the package and Conard disappeared to another part of the house again, with the purchase money.

Although a male voice could be heard in another room with Conard, neither Agent Rowell nor Sasser ever saw the source. A door was also heard to close. Their transaction completed, Agent Rowell and Sasser left the house. On reaching their car, Agent Rowell notified surveillance units that the transaction was complete and that the source had just departed.

Special Agent Stephen McCormick, who had with Special Agent Henry Baker conducted surveillance of 1052 Willett on December 22, 1987, testified that he had observed a gray Oldsmobile drive up and pull into the driveway at 1052 Willett. A short while later, he had observed a Black male approximately 6'2"–6'4" tall leave the residence, jump over a hedge and get into the gray Oldsmobile. He identified this individual as being Terry Draper.

Drug Enforcement Agent Brian Keith Chambers also purchased one ounce of cocaine from Conard on January 12, 1988. Later, another transaction was arranged by Agent Chambers and Sasser with Conard. It was to take place in the parking lot of a 7–Eleven store at the intersection of Cleveland and Poplar Streets on January 21, 1988. On that date, Agent Chambers and Sasser were waiting, as agreed, when the same gray Oldsmobile pulled into the parking lot. Agent Chambers, who had observed Draper on December 22nd, testified that Draper was driving the Oldsmobile on this occasion, with Conard in the passenger seat. Agent Baker testified that he also had observed the gray Oldsmobile pick up Conard at 1052 Willett earlier that same day.

Conard exited the gray Oldsmobile and joined Agent Chambers and Sasser in their car. He stated that he was nervous and that his man wanted to move the buy to Krystal's Restaurant down the street. Agent Chambers drove to Krystal's with Draper and the Oldsmobile following close behind, and Conard and Sasser entered the restaurant. First, however, Conard approached the Oldsmobile and spoke briefly with Draper, who was still seated in it. Once the other two were in the restaurant, Agent Chambers left his car and began

walking over to the Oldsmobile, whereupon Draper got out of his car and walked towards Agent Chambers. Agent Chambers testified that when they met, Draper identified himself as "Terry," offered him a business card with his beeper number handwritten on the back, and advised Agent Chambers that he should call him directly for any future dealings. Agent Chambers had also noticed a pearl handled revolver in the waistband of Draper's pants.

Meanwhile, Sasser had gone into the restroom of the restaurant with Conard, purportedly to see the drugs before making payment. After having seen what appeared to be cocaine, Sasser returned to the parking lot and gave the arrest signal to Agent Chambers.

On Sasser's signal, Draper returned to the Oldsmobile. Agent Chambers, assisted by Agent Walter Hoback, who was identifiably dressed as a law enforcement officer, identified themselves and attempted to arrest the Appellant. Draper sped off, grazing Chambers in the process. Additional DEA agents who had been on surveillance gave pursuit. After a high speed pursuit, the Appellant was forced to stop, and arrested. Agent Corbett Hart of the Federal Bureau of Investigation, who had been one of the agents involved in the pursuit, testified that something appeared to have been thrown from the Oldsmobile in flight. A subsequent search of the pursuit route, however, was fruitless.

Meanwhile, Agents Chambers and Hoback, who had remained in the parking lot, entered the restaurant, arrested Conard, and found a package containing, undisputedly, cocaine.

## II.

■ The Appellant claims that the evidence adduced at trial was insufficient to sustain a conviction. We, however, find to the contrary. As we held in *United States v. Elkins*, 732 F.2d 1280, 1287 (6th Cir. 1984), "... a challenge on appeal to the sufficiency of the evidence will be determined by review of the evidence in the light most favorable to the government." A conviction will be affirmed if, after such

review, "there is sufficient competent evidence on the record to justify a rational juror's conclusion that every element of the offense has been established beyond a reasonable doubt." *See also Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *United States v. Tilton*, 714 F.2d 642 (6th Cir.1983); and *United States v. Wolfenbarger*, 426 F.2d 992 (6th Cir.1970).

Review of the record before us reveals ample competent evidence upon which a rational juror might draw a conclusion of guilt beyond a reasonable doubt. Appellant argues that, because no cocaine was ever found in his possession, he could not have been convicted of cocaine possession. A rational juror, however, could certainly conclude, based upon the evidence presented, that Appellant aided and abetted possession with intent to distribute, as well as constructively possessed the cocaine.

To find that constructive possession exists, an individual need not have physical possession. Rather, all that need be shown is that the individual knowingly has the power to exercise a measure of dominion and control, either directly or through others. *United States v. Craven*, 478 F.2d 1329 (6th Cir.1973), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *United States v. Burch*, 313 F.2d 628 (6th Cir.1963).

Here, Appellant was identified by law enforcement personnel as the driver of the gray Oldsmobile which was observed at Conard's house on December 22, 1987, during an undercover drug buy and again at the Krystal Restaurant meeting of January 21, 1989, which had been arranged for the same unlawful purpose. Appellant also identified himself to Agent Chambers as "Terry," and suggested that Agent Chambers call him directly the next time that he wished to make a deal.

Clearly, he was aware of the transaction at hand, and superior to Conard in the enterprise. Appellant offered the alibi testimony of Van Clayborn, a professional deejay and friend, that Draper had been

working with him on the night of December 22, 1987, from 6:00 p.m. until 3:00 a.m. the following morning. This testimony was corroborated by Ms. Bridgett Wallace, Draper's fiancee, who lived with him. Ms. Wallace also testified that on January 21, 1988, the date of the second drug buy, Appellant had picked her up at work and the two of them had then gone home after making a couple of stops to buy newspapers. She stated that the defendant had received a phone call from Conard at about 7:15 p.m. that evening.

Testifying on his own behalf, Draper reiterated the claims of Mr. Clayborn and Ms. Wallace concerning December 22, 1987. He also said that Conard had indeed called him on January 21, 1988, had asked Appellant to pick him up, at the Krystal, and that when Draper arrived at the Krystal, he did not see Conard until Conard tapped on his car window and stated that he was going inside to get something to eat. A rational juror may well have disbelieved the defense case.

■ Appellant's second contention is that the trial court erred in permitting the government to cross-examine Bridgett Wallace with regard to kidnapping charges which she had previously lodged against the defendant and subsequently attempted to withdraw. He asserts that cross-examination on that subject, of other crimes, was improper and prejudicial.

Ms. Wallace was a key alibi witness, and her credibility was a central issue. Federal Rule of Evidence Rule 608(b) permits inquiry into specific instances of conduct which may bear on the credibility of a witness in order to impeach the witness' testimony. Under the circumstances of the instant case, the probative value of the testimony elicited from Ms. Wallace far outweighed any prejudice. Moreover, the District Judge included an instruction in her closing charge, cautioning the jury that Ms. Wallace's testimony had not been offered to establish whether the events of which she had complained had actually occurred, but rather, the testimony had gone to her credibility, and should be considered for that purpose only. Appellant has made no showing that he was prejudiced by the introduction of this testimony or that there was an abuse of discretion. Therefore, there was no error.

Finally, Appellant challenges the sentence imposed. First, he questions the propriety of being sentenced under alternative theories; both under the law of total judicial discretion within statutory maxima, as it existed prior to the sentencing guidelines; and alternatively, under the dictates of the Guidelines. Second, he claims that mitigating factors which would have reduced his sentence below the range calculated pursuant to the Guidelines were not considered by the Judge in her calculation of his sentences.

■ The Sentencing Guidelines Act of 1986 (the Act), 28 U.S.C. § 994, established a new framework within which federal judges must exercise very limited discretion when determining sentences. The primary goal of the Act was to eradicate what Congress felt to be gross and unjustified disparity in sentencing across the nation, and to foster uniformity. In so doing, the Act reduced a large measure of the discretion previously left to trial judges in determining sentences within statutory maximum terms. Prior to the Supreme Court's recent ruling in *United States v. Mistretta,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), holding the Guidelines Act to be constitutional, there was a wide diversity of thought among the federal courts with regard to its constitutionality. As numerous cases on the subject worked their way to the Supreme Court district courts, including this one, which had held the Act unconstitutional, adopted a dual sentencing approach so that resentencing would not become necessary, whether the Guidelines ultimately were held constitutional or not. *See United States v. Brittman,* 687 F.Supp. 1329 (E.D.Ark.1988), *modified,* 872 F.2d 827 (8th Cir.1989).

The district judge in the instant case sentenced Appellant to forty-two (42) months of incarceration with a three (3) year special parole term and a $50.00 special assessment. Under the pre-Act law, the trial judge was permitted to sentence Appellant up to a lifetime of incarceration, the statutory maximum, within the total discretion of the sentencing Judge. This

sentence was imposed because it was the sentence resulting from the court's correct calculations in accordance with the Guidelines. We hold that the dual sentencing procedure employed by the court was neither unconstitutional nor an abuse of discretion. The Court's recitations that the sentence, which was correct under the Guidelines, was also imposed under prior law, merely assured that Appellant would not have to be resentenced in the future if the court's opinion as to the constitutionality of the Guidelines had proved correct. Under *Mistretta, supra,* the Guidelines were upheld. If the court had sentenced Appellant to a longer term of incarceration, within 21 U.S.C. § 841, up to the statutory maximum of life imprisonment, she would have been required to conduct a post-*Mistretta* sentencing to comport with the Guidelines.

Appellant's final claim of error is that, pursuant to the Guidelines he was entitled to a lower sentence. A defendant may appeal his sentence, pursuant to the new statute, under limited circumstances which are recited at 18 U.S.C. § 3742:

> A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
>
> (1) was imposed in violation of law;
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a); or
>
> (3) was imposed for an offense for which a sentencing guideline has been issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1), and the sentence is greater than
>
>> (A) the sentence specified in the applicable guideline to the extent that the sentence includes a greater fine or term of imprisonment or term of supervised release than the maximum established in the guideline, or includes a more limiting condition of probation or supervised relese under section 3563(b)(6) or (b)(11) than the maximum established in the guideline.

A sentence which is within the Guidelines, and otherwise valid, as is the case here, is not appealable on the grounds that the sentencing judge failed to depart from the Guidelines on account of certain factors which the defendant feels were not considered by the Guidelines and should reduce his sentence. Furthermore, assuming *arguendo* that the issue were appealable, the record gives no support to the contention that the trial court's failure to depart from the Guidelines constituted an abuse of discretion.

Specifically, Appellant here asserts that he should not have been considered the leader of the criminal enterprise, that credit should have been given for his acceptance of responsibility, and that his prior convictions were misapplied in determining his sentence. He further claims that the trial judge should have departed from the Guidelines because of his atypical ameliorating characteristics. As stated above, the claim which Appellant here makes is unappealable, as it is not provided for in the statute, and even if we were to agree with this contention, there are no grounds for reversal. We see no error here, either in application of the Guidelines or refusing to depart therefrom.

Affirmed.