902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ron MORRIS, Defendant-Appellant.
 No. 89-5747.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1990.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Morris is one of five defendants who were charged in a three-count indictment for (1) conspiracy to distribute in excess of one hundred kilograms of marijuana (21 U.S.C. Sec. 846); (2) attempt to possess with intent to distribute in excess of one hundred kilograms of marijuana (21 U.S.C. Sec. 841); and (3) use of an automobile in interstate commerce to facilitate the distribution of marijuana (18 U.S.C. Sec. 1952(a)(3)). The indictment was later expanded to include a forfeiture count involving seizure of $124,590.
 
 
 2
 All five defendants entered plea agreements, including waivers of any rights to the $124,590 seized at the time of arrest. Morris pled guilty to conspiracy to possess with intent to distribute. Defendants Walker, Edwards and Krzemien also filed guilty pleas to the same count. Defendant Mosier, however, pleaded guilty to a violation of the Travel Act, 18 U.S.C. Sec. 1952(a)(3), a lesser offense under the guidelines. Under the plea agreements, all of the remaining counts were dropped as to each defendant.
 
 
 3
 Walker approached undercover agents and expressed an interest in purchasing a large quantity of marijuana. Walker and Edwards traveled to Louisiana to negotiate the purchase. Final negotiations occurred in Nashville, where Walker and the agent agreed on a purchase of 238 pounds of marijuana for $125,000. During the course of the negotiations, phone calls were placed to Morris' home in New York, and it appears that Morris agreed to take and distribute some portion of the 238 pounds of marijuana involved.
 
 
 4
 According to the plea agreements, each of the defendants was offered the opportunity to cooperate with law enforcement officials, in exchange for which the government agreed to recommend a downward departure under the guidelines. Each of the defendants, other than Morris and Mosier, did cooperate with officials.
 
 
 5
 Under the guidelines as calculated by the government, defendant Mosier had a combined offense guideline of 20 (including a 4-level reduction for being a "minimal participant") and a criminal history category of I, indicating a guideline imprisonment range of at least 33 months. The court sentenced Mosier to probation, a downward departure which was found justified because of his minimal participation. Defendant Krzemien had a combined offense level of 24 and a criminal history category of I, leading to a guideline imprisonment range of 51 to 63 months. She was sentenced to only six months in prison followed by a period of supervised release. Defendants Walker and Edwards each had a combined offense level of 24 and a criminal history category of II, leading to an imprisonment range of 57 to 71 months. Walker was sentenced to only ten months in prison, and Edwards was placed on probation. The government argues that each of these downward departures (with the exception of Mosier's) was justified by the defendants' substantial assistance to law enforcement authorities. The government agreed as to several co-defendants not to appeal; it appealed none of the other dispositions.
 
 
 6
 Morris was found not to be a minimal participant, and he offered no assistance to the authorities. He was sentenced to 51 months' imprisonment.
 
 
 7
 On appeal, Morris argues that the sentencing judge erred in not departing downward in view of the extreme disparities in sentencing between Morris and his codefendants. Morris received five times more incarceration than did Walker, who received the second highest sentence of all the defendants involved actively in the same drug conspiracy.
 
 
 8
 The government argues that the disparities are justified because (a) defendant Mosier was a minimal participant, and (b) defendants Walker, Edwards and Krzemien all gave substantial assistance to law enforcement authorities. The government also argues that a district court's decision not to depart downward is not reviewable by this court.
 
 
 9
 The appealability of a lower court's sentencing decision is determined by 18 U.S.C. Sec. 3742.[1] That section reads, in pertinent part:
 
 
 10
 (a) Appeal by a defendant.--A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
 
 
 11
 (1) was imposed in violation of law;
 
 
 12
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 
 
 13
 (3) is greater than the sentence specified in the applicable guideline range ... or
 
 
 14
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 15
 18 U.S.C. Sec. 3742.
 
 
 16
 Appellant asserts that a district court's refusal to make a justified downward departure should result in a finding that the sentence was imposed in violation of law, thereby rendering it subject to review under section 3742(a)(1).
 
 
 17
 Appellant argues that a downward departure may be required under 18 U.S.C. Sec. 3553(a):
 
 
 18
 The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]. The court, in determining the particular sentence to be impsoed, shall consider--
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct ...
 
 
 22
 Other circuits have concluded that a decision not to depart from the guidelines is not appealable. United States v. Colon, 884 F.2d 1550, 1553 (2nd Cir.) (reading section 3742(a)(1) broadly "would make nonsense of Section 3742 by rendering its other subsections utterly superfluous"), cert. denied, 110 S.Ct. 553 (1989); United States v. Fossett, 881 F.2d 976, 979 (11th Cir.1989); United States v. Davis, 878 F.2d 1299, 1301 (11th Cir.), cert. denied, 110 S.Ct. 341 (1989). The Fifth Circuit has held that mere disparity in sentencing between codefendants is not, by itself, an abuse of discretion. United States v. Boyd, 885 F.2d 246, 248 (5th Cir.1989), quoting United States v. Atkins, 618 F.2d 366, 373-74 (5th Cir.1980). We appear to have allied ourselves with Colon and Franz in United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989), but without discussion or citation of authority.
 
 
 23
 We declined to address the appealability of a trial court's decision not to depart downward in United States v. Sailes, 872 F.2d 735, 739 (6th Cir.1989). We are not convinced that Draper is clear precedent, but its rationale supports our decision to affirm in this case.
 
 
 24
 We are disposed to believe that we are not precluded from reviewing the action of the district court in declining to effect a guidelines departure, but on a very limited basis equivalent to a clear abuse of discretion or a clear error of law. Viewing the case of defendant Morris, apart from the action of the court in making a downward departure for all of the other defendants, we would find no abuse of discretion in sentencing Morris at the lowest level indicated by the guidelines. Some disparity in a sentence given equally culpable defendants is left under the guidelines (as in the pre-guidelines period) to the sound judgment of the sentencing judge. The government points to differences and distinctions in the roles and in the willingness to cooperate between the defendants. Under the circumstances, we find no clear abuse of discretion nor any error of law in the action of the district court.
 
 
 25
 We AFFIRM the decision not to depart downward despite the disparity in the sentences meted out to Morris and the other defendants.
 
 
 26
 WELLFORD, Circuit Judge, concurring.
 
 
 27
 I reluctantly join in affirming the district court's decision in this case. The result reached here came about by arrangement between attorneys for cooperating guilty defendants and the United States Attorney, and was approved without discussion by the district court. There was little evidence in this record as to the extent of cooperation by Walker, Edwards and Krzemien, who were, in effect, slapped on the wrist by deep downward departures in the sentences given without objection by the government.
 
 
 28
 Walker was convicted in a major drug offense in 1980 and actually served three years and then was released early from probation in 1987 just a year before his active involvement in the instant offense. He fled the scene when co-defendant Krzemien was arrested. He had several drunk and disorderly offenses on his record previously. Instead of being sentenced here, within the guidelines, to a minimum of 57 months, he was sentenced to only five months incarceration plus five months in a halfway house. He was apparently continuing to use marijuana prior to his arrest in 1988. The probation officer noted in the presentence report that Walker had a good job and the ability to pay a fine in installments. There was no fine imposed. In an addendum to the presentence report it was reported that he "provided assistance in the investigation of another drug case."
 
 
 29
 Edwards was also actively involved, and, under the guidelines, was due to receive a minimum sentence of 57 months. He received probation without objection by the government. He had been involved in another substantial drug offense and entered a guilty plea in 1984, receiving only a six month sentence in a Nashville "opportunity house", followed by 42 months probation. It was while on probation from the prior drug conviction and sentence that Edwards participated in the instant offense. Again, in 1985, Edwards was charged with possession of drugs and received only a $125 fine. He tested positive for cocaine after his arrest in this case in 1988, according to the presentence report. That report also indicates he was charged with contempt of court for failing to support his children and apparently was involved in drinking and using drugs excessively. It is very difficult for this judge to understand how the government would have no basis for objection to a sentence of probation for Edwards, and how the sentencing judge could reach such a disposition. The extent of Edwards' cooperation is not indicated in this record.
 
 
 30
 Krzemien, under the guidelines, was due to be sentenced to a minimum of 51 months; instead the district court made a downward departure and sentenced her to only six months. Mosier, another participant in the drug conspiracy, was given probation in this case instead of the indicated guidelines minimum of 41 months. He was co-operator of a business with defendant Morris and made over $22,000 in reported income in 1988.
 
 
 31
 Our cases frequently indicate that a basic purpose of the guidelines is to avoid unwarranted disparity in sentencing and to promote uniformity under the extensive set of formulae and methodology set out in the guidelines. See United States v. Williams, No. 89-5460 (6th Cir. Jan. 25, 1990); United States v. Joan, 883 F.2d 491, 493 (6th Cir.1989); United States v. Allen, 873 F.2d 963, 966 (6th Cir.1989).
 
 
 32
 The guidelines themselves have this to say:
 
 
 33
 To understand these guidelines and the rationale that underlies them, one must begin with the three objectives that Congress, in enacting the new sentencing law, sought to achieve. Its basic objective was to enhance the ability of the criminal justice system to reduce crime through an effective, fair sentencing system. To achieve this objective, Congress first sought honesty in sentencing.
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 Second, Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders. Third, Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity.
 
 
 37
 Part A, Introduction, 3. (Basic Approach) (emphasis in original).
 
 
 38
 [T]he Commission believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often. This is because the guidelines, offense by offense, seek to take account of those factors that the Commission's sentencing data indicate make a significant difference in sentencing at the present time.
 
 
 39
 Part A, Introduction, 4(b) (Departures).
 
 
 40
 This is a classic case of lack of fairness, uniformity, and proportionality in the sentencing process. Two defendants, business associates, did not cooperate; one was given a 51 month sentence, the other probation. Two active participating defendants in this substantial drug offense had significant prior drug offense records, one a recent record and probationary status. Of the two defendants with the worst records, one received a ten month (split time in halfway house) sentence and the other, probation; Morris, who had only a prior 13 year old misdemeanor possession offense, received 51 months.
 
 
 41
 This example of gross disparity under the guideline system demonstrates what a willing prosecutor and a cooperative judge may accomplish to thwart and distort the intended guideline process. The willingness of several actively participating guilty defendants to cooperate cannot, in my view, warrant such disparity and apparent unfairness. Morris is entitled to no relief under precedential authority and the law, but I can understand his unhappiness with this result.
 
 
 42
 ENGEL, Senior Circuit Judge, concurring.
 
 
 43
 I concur in affirming the conviction of defendant Ronald Morris because I do not believe that a decision not to depart from applicable Sentencing Guidelines is appealable. In my opinion this is the law of our circuit under United States v. Draper, 888 F.2d 1100 (6th Cir.1989). I particularly agree with the reasons for non-appealability as expressed by Judge Winter in the Second Circuit's decision in United States v. Colon, 884 F.2d 1550 (2d Cir.1989).
 
 
 44
 When a sentence is unquestionably within the mandate of the Sentencing Guidelines I fail to see how a decision of a trial judge to obey those Guidelines can be viewed as an abuse of discretion. To subject such sentences to the scrutiny of an appellate court is bound to increase unnecessarily the load of the appellate courts and was never, in my opinion, contemplated by the Act. To the extent that there might conceivably be an area in which the failure to grant a departure would amount to a true abuse of discretion, I should think that it would almost invariably involve constitutional considerations which can be reached either by attacks upon the statute or the Guidelines themselves or through the avenue of the more restricted and usually constitutional limits of relief available under 26 U.S.C. Sec. 2255.
 
 
 
 [1]
 The Eleventh Circuit has held that section 3742 does not regulate the jurisdiction of the courts of appeals over sentencing decisions. Jurisdiction is granted by 28 U.S.C. Sec. 1291, which gives the courts of appeals the power to hear appeals "from all final decisions of the district courts...." Section 3742, on the other hand, merely "defines the claims that the court of appeals may hear" in reviewing sentencing decisions. United States v. Fossett, 881 F.2d 976, 978-79 (11th Cir.1989). The Seventh Circuit, on the other hand, treats the section as a jurisdictional issue. United States v. Franz, 886 F.2d 973, 981 n. 8 (1989) ("[c]ertainly we do not have jurisdiction over appeals that a party is not statutorily authorized to file.")