902 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randy D. MOODY, Defendant-Appellant.
 No. 89-6544.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1990.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 
 
 1
 PER CURAIM.
 
 
 2
 Appellant Randy Moody was convicted on twenty-one counts of mail fraud following a jury trial, and he now appeals various aspects of the sentence imposed by the district court. Moody, a 31-year-old pastor of a small Tennessee church, obtained a list of persons in the Nashville area who had recently purchased homes. Using the name "RLM Financial Service," Moody sent letters to fifteen of these homeowners instructing them to send their next mortgage payments to RLM at a specified location, a postal box service.
 
 
 3
 Several suspicious homeowners, including one who had paid cash for her house, notified postal authorities, who placed the postal box location under surveillance. Moody was arrested on April 11, 1988, as he collected the contents of the box, which contained six checks (including two from a single individual), totaling $3,611. Because of the intercession of the postal authorities, however, none of the checks obtained by Moody were ever cashed, and the only actual damages incurred by homeowners were minor late fees or charges.
 
 
 4
 Following his conviction, Moody was sentenced to ten months' incarceration, five of those months to be served in "community confinement," and was fined $3,299.76. On appeal, he contends (1) that the district court erred in calculating the amount of loss caused by the scheme; (2) that the district court erred in failing to grant Moody credit for acceptance of responsibility; (3) that the district court erred in failing to grant Moody a downward departure; and (4) that the fine imposed was excessive.
 
 I. Calculation of Loss
 
 5
 Under the applicable Sentencing Guideline, the base offense level for mail fraud is 6. U.S.S.G. Sec. 2F1.1(a). Where the loss exceeds $2,000, the offense level for a fraudulent scheme is increased depending on the amount in question. U.S.S.G. Sec. 2F1.1(b)(1). In arriving at a loss figure for Moody's scheme, the court computed the average amount of the checks sent to RLM, and multiplied that figure by the total number of letters sent plus one (to account for the individual who sent not one but two checks). This method of calculation resulted in an estimated loss of $10,260. Using this procedure, the district court added three points to the base offense level.
 
 
 6
 Appellant asserts that this was error, contending that the assumption of a 100 percent response rate to the letters leads to an unreliable and inflated measurement of loss. Instead, appellant seeks to have the loss calculated on the amount of the checks actually sent to the postal box, $3,611.
 
 
 7
 7. Valuation of loss ... In keeping with the Commission's policy on attempts, if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss....
 
 
 8
 8. The amount of loss need not be precise. The court is not expected to identify each victim and the loss he suffered to arrive at an exact figure. The court need only make a reasonable estimate of the range of loss, given the available information. The estimate may be based on the approximate number of victims and an estimate of the average loss to each victim ...
 
 
 9
 U.S.S.G. Sec. 2F1.1, comment. (emphasis added).
 
 
 10
 The district court's method of computation, then, is within the contemplation of the guidelines. The computation proposed by appellant, based on the offender's gross gain, "ordinarily will understate the loss." U.S.S.G. Sec. 2F1.1, comment. (n.8). Accordingly, we do not disturb nor find erroneous the estimate of loss arrived at by the district court.
 
 II. Acceptance of Responsibility
 
 11
 The trial court declined to grant Moody a two-point credit for acceptance of responsibility:
 
 
 12
 The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.
 
 
 13
 U.S.S.G. Sec. 3E1.1, comment (n. 5). United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989) counsels that we will seldom upset a district court's factual determination in this area based upon the court's opportunity to assess credibility and other pertinent factors.
 
 
 14
 The record indicates that Moody initially told postal inspectors that another person had perpetrated the scheme, and that the other person had asked Moody to help straighten the matter out. He later recanted this story. At trial, although he admitted to all of the facts underlying the scheme, he steadfastly maintained that he had never really intended to cheat anyone. His defense also relied on expert psychological testimony to the effect that extreme stress left him unable to form the specific intent to defraud.
 
 
 15
 Moody indicated the following at the sentencing hearing:
 
 
 16
 ... [M]y understanding of it now in retrospect after my counseling, after trying to understand and analyze the situation and really understand what took place, I can see where it had the appearance of wrongdoing; can see, you know, that someone who would be thinking clearly at the time and seeing, as I understand it now, at that time, and still going ahead with it, would have some intent.
 
 
 17
 I accept responsibility for my actions to the best of my knowledge of my understanding of it now. However, I still say that I didn't really understand what I was doing, wasn't able to or didn't think it through. Maybe subconsciously I knew it was wrong. Maybe that is part of the reason I have some problems with it now.
 
 
 18
 To the best of my understanding, I understand the actions now, but my intent, I don't believe I consciously intended to cheat anybody.
 
 
 19
 The sentencing judge's decision was not clearly erroneous under the circumstances.
 
 III. Refusal to Depart Downward
 
 20
 The government argues that this issue is not appealable under United States v. Draper, 888 F.2d 1100 (6th Cir.1989). Appellant does not contend that Draper is not controlling in this situation. He preserves the point in the event the Supreme Court should decide the matter differently. In any event, we do not believe that Moody's failure to receive a downward departure should be disturbed under any standard of review. Whether we have the authority to review failure to effect a departure except for an error of law we do not revisit at this time.
 
 IV. Imposition of Fine
 
 21
 The court imposed a fine on Moody of $3,299.76, plus $1,050 in mandatory special assessments, to be paid in monthly installments of $96.66 as a condition of his supervised release. Exactly how the court arrived at the total $3,299.76 figure is unclear on the record. The guidelines, however, allow for a fine of between $2,000 and $20,000 for an offense level of 11.
 
 
 22
 Appellant argues that the fine was excessive and unreasonable and that the court erred in failing to adequately consider Moody's ability to pay. The district court heard evidence, and explicitly considered Moody's financial situation.
 
 
 23
 (d) In determining the amount of the fine, the court shall consider:
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 (2) the ability of the defendant to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 (e) The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive.
 
 
 30
 (f) If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine.
 
 
 31
 U.S.S.G. Sec. 5E1.2.
 
 
 32
 The district court imposed a fine within guideline limits; the section above recited gives discretionary power to the court to reduce or waive the fine if circumstances so warrant. We do not consider the fine to represent an abuse of discretion. Pursuant to section 5E1.2(h) and 18 U.S.C. Sec. 3614, a defendant cannot be resentenced to prison for failure to pay a fine unless he "willfully refuse[s] to pay the delinquent fine or [fails] to make sufficient bona fide efforts to pay the fine ..." 18 U.S.C. Sec. 3614(b)(1). Moody may still have relief at the proper time if warranted.
 
 
 33
 Accordingly, we AFFIRM the sentence imposed by the district court.