923 F.2d 855
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph W. CECIL, Ronald Ellis, and Robert E. Lee,
Defendants-Appellants.
 Nos. 89-6566, 90-5555, 90-5102 and 90-5100.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and WISEMAN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendants Lee, Ellis, and Cecil each pleaded guilty to conspiracy to manufacture and possess with intent to distribute marijuana, in violation of 21 U.S.C. Secs. 841(a)(1), 846. Each was sentenced to a term of imprisonment. They now appeal their sentences, claiming the district court erred in applying the sentencing guidelines. We find no error and affirm.
 
 I.
 
 2
 A federal grand jury indicted defendants Lee, Ellis, Cecil and three other persons on one count of conspiring to manufacture and possess with intent to distribute about 25,000 marijuana plants, in violation of 21 U.S.C. Secs. 841(a)(1), 846. Later, a superceding indictment containing additional counts was filed. Finally, the government filed a one-count superceding information containing the same charge against the defendants as had the original grand jury indictment except that the number of marijuana plants was changed from 25,000 to 959.
 
 
 3
 Defendants produced and distributed marijuana grown at four different "farms" in Missouri. The three farms which are the subject of the superceding information and of defendants' guilty pleas contained a total of 959 marijuana plants. The other farm contained about 24,000 marijuana plants. All three defendants waived indictment and pleaded guilty to the superceding information. The district court then dismissed all previous charges against them. All three defendants appeal their sentences and, in addition, Cecil appeals the denial of his motion to have his federal sentence run concurrently with a pre-existing state sentence based on a similar crime.
 
 A. Lee's Sentence
 
 4
 The district court found Lee had a total offense level of 25 and a criminal history category of I. The offense level included a three-level increase for his role as a manager or supervisor in the crime. The sentencing guidelines range thus was 57 to 71 months, and the court imposed a sentence of 68 months' imprisonment and four years' supervised release.
 
 B. Ellis's Sentence
 
 5
 The court found Ellis had a total offense level of 27 and criminal history category of I. The offense level included a three-level increase for his role as a manager or supervisor in the crime. The corresponding sentencing range under the guidelines is 70 to 87 months. The court sentenced Ellis to 70 months' imprisonment and 4 years' supervised release.
 
 C. Cecil's Sentence
 
 6
 The court found Cecil had a total offense level of 22 and a criminal history category of III. The sentencing range under the guidelines was thus 51 to 63 months. The court sentenced Cecil to 57 months' imprisonment and 4 years' supervised release, and denied Cecil's motion to have his federal sentence run concurrently with a state-imposed sentence.
 
 II.
 
 7
 The United States Code mandates general principles we must follow in reviewing sentences imposed under the United States Sentencing Guidelines. On review of the record, we must determine whether the sentence--
 
 
 8
 (1) was imposed in violation of law;
 
 
 9
 (2) was imposed as a result of an incorrect application of the sentencing guidelines;
 
 
 10
 (3) is outside of the applicable guideline range, and is unreasonable, having regard for--
 
 
 11
 (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
 
 
 12
 (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
 
 
 13
 (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.
 
 
 14
 The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 15
 18 U.S.C. Sec. 3742(e) (emphasis added).
 
 A. Defendant Lee
 
 16
 Lee claims the district court erred in finding that Lee was a supervisor of criminal activity within the meaning of the sentencing guidelines.
 
 
 17
 An offense level may be increased based upon the defendant's aggravating role in the offense, "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." U.S.S.G. Sec. 3B1.1(b) (1989). Neither Lee nor any of his codefendants denies that at least five individuals participated in the conspiracy.
 
 
 18
 The district court's determination with respect to a defendant's role in the offense is subject to the clearly erroneous standard of review. United States v. Williams, 894 F.2d 208, 213-14 (6th Cir.1990). With respect to a sentence increase, the government must prove by a preponderance of the evidence facts upon which the court should rely in determining the sentence. United States v. Carroll, 893 F.2d 1502, 1506 (6th Cir.1990). In determining whether a defendant acted as an organizer, leader, manager, or supervisor, we consider:
 
 
 19
 (1) the exercise of decision making authority;
 
 
 20
 (2) the nature of participation in the commission of the offense;
 
 
 21
 (3) the recruitment of accomplices;
 
 
 22
 (4) the claimed right to a larger share of the fruits of the crime;
 
 
 23
 (5) the degree of participation in planning or organizing the offense;
 
 
 24
 (6) the nature and scope of the illegal activity; and
 
 
 25
 (7) the degree of the control and authority exercised over others.
 
 
 26
 U.S.S.G. Sec. 3B1.1, comment. (n. 3) (emphasis added).
 
 
 27
 Lee's presentence report summarizes his involvement as follows:
 
 
 28
 The defendant, Robert E. Lee, is reported to have been second in charge of the "Lee farms" operation. He transported farm machinery and an automobile from Kentucky to Missouri, which was utilized at the marijuana farms. Robert E. Lee was also to receive a percentage of the profit from these farms; and, he was listed as a contact person should difficulties arise.
 
 
 29
 We hold that based upon this information, the district court's finding that Lee was a manager or supervisor of criminal activity is not clearly erroneous.
 
 B. Defendant Ellis
 
 30
 Ellis claims the district court clearly erred in finding that Ellis was a manager of criminal activity within the meaning of the sentencing guidelines and that he did not accept responsibility within the meaning of the guidelines.
 
 
 31
 1. The finding that Ellis was a manager of criminal activity.
 
 
 32
 The standards we follow in reviewing a district court's fact-finding that a defendant was a manager or supervisor of criminal activity are set out above. Information indicating that Ellis was a manager of criminal activity is summarized in Ellis's pre-sentencing report:
 
 
 33
 Robert Lee and Ellis were indirect business partners in a Marion County used auto lot to assist in supplying automobiles and farm equipment as needed to the Lee farms. Also, Ellis recruited his stepdaughter, Rita Kachriman, and her husband, Ali Kachriman, to become resident managers of one of the Lee farms. The stepdaughter had approached Ellis for financial assistance and Ellis proposed this position for the husband and wife team. The Kachrimans faced state charges in Missouri and are currently on probation in that state. They are not codefendants in the instant offense. Mr. Ellis had paid the expenses of the Kachrimans while they resided on the farm, through money received from the Lee brothers.
 
 
 34
 Mr. Ellis also recruited Joseph Overstreet (a young man who had worked for Ellis as a mechanic at Ellis' auto dealership) to travel to Missouri to help tend the marijuana crop. Ellis paid the travel expenses of Mr. Overstreet on at least two occasions (trips lasting 3 to 4 days) in Missouri. Defendant Ellis was to receive a percentage (in payment for his work) of the marijuana crop proceeds. He states he was never paid any percentage amount, but only travel expenses, which came from Robert E. Lee.
 
 
 35
 At Ellis's sentencing hearing, the court concluded:
 
 
 36
 He has made a number of trips back and forth to Missouri. He has carried money up there. He has carried people up there. It seems to me he is a manager. He may not be the organizer and may not be the kingpin. He certainly had a managerial role in that he was taking people and money from Kentucky into Missouri. I think the three level increase is appropriate.
 
 
 37
 We hold that the district court's finding that Ellis was a "manager" is not clearly erroneous.
 
 
 38
 2. The finding that Ellis failed to take personal
 
 
 39
 responsibility for his crime.
 
 
 40
 The guidelines allow the district court to make a 2-level reduction in the offense level where "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. Sec. 3E1.1(a) (1989). The clearly erroneous standard applies to the district court's determination that Ellis failed to take personal responsibility for his criminal activity. United States v. Wilson, 878 F.2d 921, 924 (6th Cir.1989). Under the guidelines, "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." U.S.S.G. Sec. 3D1.1, comment. (n. 5) (1989); Wilson, 878 F.2d at 923; United States v. Barrett, 890 F.2d 855, 868 (6th Cir.1989).
 
 
 41
 In determining whether a defendant qualifies for this provision, the sentencing court considers, among other things:
 
 
 42
 (a) voluntary termination or withdrawal from criminal conduct or associations;
 
 
 43
 (b) voluntary payment of restitution prior to adjudication of guilt;
 
 
 44
 (c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;
 
 
 45
 (d) voluntary surrender to authorities promptly after commission of the offense;
 
 
 46
 (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
 
 
 47
 (f) voluntary resignation from the office or position held during the commission of the offense; and
 
 
 48
 (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.
 
 
 49
 U.S.S.G. Sec. 3D1.1, comment. (n. 1).
 
 
 50
 Defendants requesting sentence reductions bear the burden of proving facts leading to such reduction by a preponderance of the evidence. United States v. Rodriguez, 896 F.2d 1031, 1032 (6th Cir.1990). We note that a guilty plea does not automatically warrant an "acceptance of responsibility" sentence reduction as a matter of right, although it may provide some evidence of acceptance of responsibility. U.S.S.G. Sec. 3E1.1(c) (1989); Carroll, 893 F.2d at 1512; Barrett, 890 F.2d at 868.
 
 According to his probation officer:
 
 51
 Mr. Ellis, while discussing his reported short-term involvement in the operation, has not clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. Mr. Ellis' reported actions compared to what the government is ready to prove are quite different in that Ellis was more important to the conspiracy than he purports. His guilty plea is some evidence of acceptance, but not itself reason for the reduction.
 
 
 52
 The district court stated, "I'm unable to see any justification for a reduction for acceptance of responsibility.... [Ellis] attempted to withdraw from the conspiracy, but he certainly did nothing thereafter until he was arrested. So any adjustment for acceptance of responsibility is inappropriate."
 
 
 53
 We hold that in view of this information, it was not clearly erroneous for the district court to find that Ellis had not proven facts showing acceptance of personal responsibility for his criminal activity.
 
 C. Defendant Cecil
 
 54
 Cecil claims the district court abused its discretion 1) in refusing either to allow Cecil credit for time served on a related state-imposed sentence or to allow Cecil to serve the state and federal sentences concurrently; and 2) in failing to consider the state-imposed sentence and a state plea bargaining agreement as mitigating factors.
 
 
 55
 1. The court's refusal to impose a term concurrent with the state sentence or to grant credit for time served on the state sentence.
 
 
 56
 Cecil had pleaded guilty to growing marijuana in Missouri and received a sentence of eight years from a Missouri state court. He served seven months of the sentence when he was released on "shock probation." Apparently he had been free on probation for about nine months when he was arrested on the federal charges.
 
 
 57
 Cecil relies upon U.S.S.G. Sec. 5G1.3 to support his contention that the court should have run his federal sentence concurrently with the state-imposed sentence. That section reads as follows:
 
 
 58
 Sec. 5G1.3. Imposition of a Sentence on a Defendant Serving an Unexpired Term of Imprisonment
 
 
 59
 If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status), the sentence for the instant offense shall be imposed to run consecutively to the unexpired term of imprisonment.
 
 Commentary
 
 60
 Under this guideline, the court shall impose a consecutive sentence where the instant offense (or any part thereof) was committed while the defendant was serving an unexpired term of imprisonment.
 
 
 61
 Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment. The court may consider imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under Sec. 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. Where the defendant is serving a terem of imprisonment for a state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines. It is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process.
 
 
 62
 U.S.S.G. Sec. 5G1.3 and comment. (1989) (emphasis added).
 
 
 63
 This provision does not apply to Cecil's situation since the criminal conspiracy did not occur while he was "serving" a term of imprisonment. Logically, the conspiracy must have occurred prior to the imprisonment or while Cecil was out on probation. The guideline does not list probation as "serving a term of imprisonment," while it does specifically mention work release, furlough, and escape status. Also, it is unclear what the "unexpired term of imprisonment" would be since we do not know whether Missouri has revoked Cecil's parole, although presumably it has. Additionally, it appears that the state offense was related to the 24,000- or 25,000-plant farm and not to the 959-plant farms which were the subject of the federal superceding information. Cecil offers no evidence that the same farm was at issue for both the federal and state sentences. In any case, the guideline language sets forth the circumstances in which a consecutive sentence is mandatory; this language does not create a right to a concurrent sentence with credit for time served. The decision to grant credit or a concurrent sentence thus is left to the sound discretion of the district court.
 
 
 64
 Cecil has not established a right under the guidelines to serve his federal sentence concurrent with the state sentence or to receive credit for time served. We hold that the district court did not abuse its discretion in imposing a consecutive sentence with no credit for time served.
 
 
 65
 2. The court's refusal to consider time served as a
 
 
 66
 mitigating factor warranting deviation from the guidelines.
 
 
 67
 The district court may deviate from the indicated guideline range if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. Sec. 3553(b); U.S.S.G. Sec. 5K2.0, p.s. However, the defendant may not appeal from the district court's decision not to deviate:
 
 
 68
 A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
 
 
 69
 (1) was imposed in violation of law;
 
 
 70
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 
 
 71
 (3) is greater than the sentence specified in the applicable guideline range ...; or
 
 
 72
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 73
 18 U.S.C. Sec. 3742(a).
 
 
 74
 Under this code section, "A sentence which is within the Guidelines, and otherwise valid ... is not appealable on the grounds that the sentencing judge failed to depart from the Guidelines...." United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989). Therefore, Cecil may not appeal his sentence to this court on the ground that the district court failed to deviate from the guidelines on the basis of a mitigating factor.
 
 III.
 
 75
 For the reasons given above, the sentences and judgments are AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief Judge of the United States District Court for the Middle District of Tennessee, sitting by designation