983 F.2d 1070
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis OSHER, Defendant-Appellant.
 No. 91-1990.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1992.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Francis Osher, appeals his conviction and sentence for illegal distribution of prescription drugs and possession of a machine gun.
 
 I.
 
 2
 After receiving information that defendant was engaging in the illegal distribution of prescription drugs from his office, the government engaged in an undercover operation in which several contacts were made by Deputy Sheriff Susan LeBarre (using the name Susan Dennis) with the defendant during April 1989 through December 1990. Deputy LeBarre acted as a patient during these contacts, complaining to Dr. Osher that she had headaches. Deputy LeBarre, on several occasions, told Dr. Osher that she was involved in narcotics trafficking with prescription drugs and used cocaine. Although he issued controlled prescription drugs to LaBarre, Dr. Osher did not perform physical examinations, nor did he behave as a physician acting in the legitimate course of medical practice.
 
 
 3
 During her office visits, Deputy LeBarre told the defendant that she had a source for weapons. The defendant ordered four automatic weapons--an AK-47, an M-16, and M-14, and a Thompson sub-machine gun from LeBarre. Several sessions later, Osher bought the automatic weapons, paying for them with drugs.
 
 
 4
 The United States then obtained a search warrant for Osher's home and office. When law enforcement officers arrested Dr. Osher at his office, he was carrying a loaded .38 caliber revolver. In his home, the agents found large quantities of controlled substances, dozens of firearms, some of which were unregistered, and a machine gun device for a military specification rifle.
 
 
 5
 During the time frame of 1985-1987, the defendant failed to file income tax returns despite an income range of at least $98,373.00-$124,073.00.
 
 
 6
 On January 4, 1991, a federal grand jury returned an indictment charging the defendant with unlawful distribution of prescription drugs, possession of machine guns, mail fraud, and failure to file income tax returns. On February 15, 1991, the original indictment was superseded. In addition, a second superseding indictment was returned on March 29, 1991.
 
 
 7
 After a two-week jury trial, defendant was convicted of counts 22-30 for the illegal distribution of prescription drugs to Susan LeBarre, count 130, possession of machine guns, and counts 133-135, failure to file income tax returns.[1] Defendant was sentenced to 71 months on counts 25, 27, 29 and 130; 60 months, concurrently, on count 22; 36 months, concurrently, on counts 23, 24, 26, 28 and 30; and 12 months, concurrently, on counts 133, 134 and 135. Defendant timely filed an appeal.
 
 II.
 
 8
 We must first decide whether the district court abused its discretion by allowing the jury to review a government-produced transcript while listening to tape recorded conversations between defendant and Deputy LeBarre.
 
 
 9
 Defendant contends that he was denied a fair trial because the jury was given a government-produced transcript to aid them in listening to taped conversations between LeBarre and defendant and because the district court refused to give to the jury defendant's version of the taped conversations. Defendant relies on United States v. Robinson, 707 F.2d 872, 876 (1983) for the proposition that when the parties fail to stipulate to the accuracy of a transcript, two transcripts should be submitted to the jury.
 
 
 10
 The present case is distinguishable from Robinson. In the first place, Robinson stated that the submission of two transcripts was the least desirable method for resolving disputes. Id. Moreover, in Robinson, the court reviewed a decision to allow a jury to review transcripts in which 1000-1400 transcript spaces had been labeled inaudible, and there were specific disputes about the content of the transcripts. Id. at 878. In the present case, although defendant objected to inaccuracies in the transcript, defendant did not specify what inaudible or questionable portions of the transcribed tapes he wanted omitted or what portions of the transcript he believed were inaccurate even though the court requested him to do so.
 
 
 11
 Although the district court could have submitted two versions of the transcript to the jury under this court's decision in United States v. Martin, 920 F.2d 393, 396 (6th Cir.1990), the court was not compelled to do so. In Martin, this court stated that "the use of transcripts is a matter committed to the sound discretion of the trial judge and we reverse only for an abuse of discretion." Id. at 396.
 
 
 12
 In United States v. Scaife, 749 F.2d 338, 345 (6th Cir.1984), this court held that the standard of review regarding tape recordings was whether the recordings, as a whole, were untrustworthy. We believe that, by analogy, this standard should be applied to the transcript at issue in the present case. The original persons who engaged in or monitored the conversations, Deputy Sheriff Susan LeBarre and Detective Dennis Witting, who overheard the conversations via a transmitter, reviewed the transcript for accuracy. Defendant makes only generalized claims as to the inaccuracies of the government-produced transcript and has failed to indicate any passage which is specifically wrong. Besides defendant's allegations, there is nothing in the record to indicate the transcript was inaccurate. For these reasons, it was not an abuse of the trial court's discretion to allow the government-produced transcript as the only aid to the jury. Moreover, the court twice instructed the jury that the transcript was not evidence, but simply an aid for their evaluation of the tapes. The district court is affirmed on this issue.
 
 III.
 
 13
 We must next decide whether the government engaged in outrageous government conduct or entrapped defendant.
 
 
 14
 A. Outrageous government conduct.
 
 
 15
 In United States v. Robinson, 763 F.2d 778, 785 (6th Cir.1985), this court articulated four factors for determining if governmental conduct was outrageous. These factors are:
 
 
 16
 (1) the need for the police conduct, (2) the impetus for the scheme or whether the criminal enterprise preexisted the police involvement, (3) the control the government exerted over the criminal enterprise, and (4) the impact of the police activity on the commission of the crime.
 
 
 17
 In the present case, it was necessary to use an undercover agent, acting as a patient, because of the closed-door nature of Dr. Osher's office activities. The government had been informed of Osher's illegal activities, and Dr. Osher willingly prescribed drugs to LeBarre without sufficient medical basis, indicating that the criminal enterprise preexisted the police involvement. In regard to the third factor, although LeBarre suggested that she sell defendant guns for drugs, the government did not unduly control the criminal enterprise. Defendant had already been illegally prescribing drugs. After Deputy LeBarre brought up the issue of guns, defendant enthusiastically made inquiries about the possibility of acquiring illegal weapons and gave LeBarre a list of the weapons he wanted. The government provided the guns, which were to be exchanged for the drugs, much as it provides cash or drugs in an ordinary undercover drug deal. We find nothing that shocks the conscience in the way the government behaved once it was clear that defendant would willingly engage in criminal activity.
 
 B. Entrapment
 
 18
 Defendant contends that he presented a valid entrapment defense that the government induced the crime and that there was a lack of predisposition on his part to engage in criminal conduct.
 
 
 19
 The district court submitted the issue of entrapment to the jury. Since the jury rejected the entrapment defense, the standard of review is whether no reasonable juror could have concluded, beyond a reasonable doubt, that the defendant was predisposed to violate the narcotics laws. United States v. Jennings, 945 F.2d 129, 133 (6th Cir.1991). This court should find entrapment, as a matter of law, only if the undisputed evidence demonstrates a patently clear absence of predisposition. United States v. Clark, 957 F.2d 248, 250 (6th Cir.1992).
 
 
 20
 When the defense of entrapment is raised, the government must prove, beyond a reasonable doubt, the defendant's predisposition to commit the crime. United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991), citing United States v. Johnson, 855 F.2d 299, 303 (6th Cir.1988). As the court noted in Barger, the five factors, which are relevant in determining whether a defendant is predisposed to commit the crime, are:
 
 
 21
 the character or reputation of the defendant, including any prior criminal record;
 
 
 22
 whether the suggestion of the criminal activity was initially made by the Government;
 
 
 23
 whether the defendant was engaged in the criminal activity for profit;
 
 
 24
 whether the defendant evidenced reluctance to commit the offence, overcome only by repeated government inducement or persuasion; and
 
 
 25
 the nature of the inducement or persuasion supplied by the government.
 
 
 26
 Id.
 
 
 27
 We believe that in the present case, the government has met its burden of proving beyond a reasonable doubt that defendant was predisposed to commit the crime. On several occasions, Deputy LeBarre told Dr. Osher that she was engaged in narcotics trafficking involving prescription drugs and cocaine. Despite these circumstances, Dr. Osher issued powerful controlled substances to Susan LeBarre over a 15-month period without adequate medical need. After Deputy LeBarre brought up the issue of guns, the defendant enthusiastically made inquiries of her as to the possibility of acquiring an illegal automatic weapon. Both her testimony and the tapes demonstrated that the defendant was predisposed to engage in illegal activity and evidenced no reluctance in committing the offense.
 
 
 28
 Defendant's previous action also indicated his predisposition. While in the Air Force Reserves, the defendant had requested Major Francis Siro, a pharmacist, to make cocaine for him for no legitimate reason. Second, the defendant was responsible for dispensing a massively disproportionate amount of Demerol at a base hospital. The defendant had been sanctioned by the Michigan Department of Licensing and Regulation in 1980 for issuing 3,000 dosage units to his former father-in-law, Joseph Burgess, during a one-year, three-month period. The defendant told Licensing and Regulation, under oath, that Joseph Burgess had terminal cancer. However, Dr. Osher's records did not indicate anything of the sort. Furthermore, defendant admitted that he had coached Deputy Sheriff LeBarre on the proper method to kill someone. After the government's attorney played several tapes for the defendant, he admitted that he was issuing prescription drugs outside the legitimate course of medical practice. Furthermore, defendant's claim that he was simply putting Deputy LeBarre at ease does not withstand scrutiny. Putting a patient "at ease" does not include the issuance of powerful prescription drugs to someone who admits to selling them and later exchanging drugs for fully automatic weapons.
 
 
 29
 Considering all of these circumstances, a reasonable juror could have concluded beyond a reasonable doubt that defendant was predisposed to commit the crimes for which he was convicted. The district court is affirmed on this issue.
 
 IV.
 
 30
 We must finally decide whether the case must be remanded for resentencing because the district court believed it was without authority to grant a departure from the sentencing guidelines.
 
 
 31
 Defendant attempts to turn this case, in which the district court refused to depart from the applicable sentencing guideline range because there was insufficient reason for departure, into one in which the court is unaware that it had the statutory authority to depart for the specified reason. See United States v. Draper, 888 F.2d 1100, 1105 (6th Cir.1989).
 
 
 32
 This effort is to no avail. It is clear from the record that the district court was aware that it could depart from the applicable guideline range--either upward or downward. The district court merely stated that it had been given insufficient reasons to warrant departure.
 
 
 33
 It is well settled that a sentence within the applicable guideline range is not appealable, United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990), if the court is aware of its discretion to depart. In the present case, defendant concedes that a 71-month sentence, although at the high end of the 57-71 month guideline range, is within the applicable guideline range. The district court was aware that it had the discretion to depart. Therefore, this sentence is not appealable.
 
 
 34
 For these reasons, the district court is hereby AFFIRMED.
 
 
 
 [1]
 Defendant does not challenge the income tax conviction on appeal