**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**William SMITH (89–3817); Chester Sargent (89–3831); Wayne McCarvey (89–3833); and Fred Sams (89–3835), Defendants–Appellants.**

**Nos. 89–3817, 31/33/35.**

United States Court of Appeals,
Sixth Circuit.

Cause Argued Aug. 16, 1990.

Decided Nov. 9, 1990.

---

Blas E. Serrano, Asst. U.S. Atty. (argued), Office of U.S. Atty., Cleveland, Ohio, for U.S.

Jake Arbes (argued), Atlanta, Ga., for William Smith.

Richard G. Lillie (argued), Corso, Lillie & Kelly, Cleveland, Ohio, for Chester Sargent.

Sam Amendolaro (argued), Youngstown, Ohio, for Wayne McCarvey.

Charles T. Robinson (argued), Mansfield, Ohio, for Fred Sams.

Before: JONES and NELSON, Circuit Judges, and SILER, Chief District Judge.*

PER CURIAM.

Defendants appeal their sentences imposed pursuant to guilty pleas on charges of conspiracy to distribute cocaine. For the following reasons, we affirm.

I

In May 1988, the Mansfield (Ohio) Police Department received a confidential report that defendant-appellant Fred Sams had brought defendant-appellant Chester Sargent and defendant-appellant Wayne McCarvey from Detroit, Michigan to Mansfield to establish a distribution ring for cocaine and crack. Between August 1988 and February 1989, Sams, Sargent, McCarvey, and Anthony Hines from Detroit (who was also a defendant in this case) made sales of crack and cocaine from Sams' house in Mansfield, or at least were present in the house during drug transactions. Defendant-appellant William Smith became involved on November 22, 1988 when Sargent and McCarvey, along with Mansfield undercover agents, picked up cocaine from Smith in Detroit. On March 2, 1989, undercover agents again travelled from Mansfield to Detroit to meet with Smith and Sargent. Smith and Sargent were arrested when Smith produced 1,001.-63 grams of cocaine.

On April 5, 1989, a federal grand jury returned a twenty-seven count indictment against McCarvey, Smith, Sams, and Sargent. In accordance with a plea agreement entered into with the government, Smith, Sargent, McCarvey, and Sams each pleaded guilty to Count 1 of the indictment, conspiracy to possess with intent to distribute cocaine and cocaine base ("crack") in violation of 21 U.S.C. § 846. McCarvey also pleaded guilty to count 25, possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g), 924(a). The remaining counts against the four defendants were dismissed. Sentences computed according to the provisions of the United States Sentencing Guidelines (USSG) were imposed on August 28 and 29, 1989, in the United States District Court for the Northern District of Ohio, Judge Alice M. Batchelder presiding.

Smith was held accountable for 1.09 kilograms of cocaine, and the base offense level was set at 26.

Sams was held accountable for 400 milligrams of crack. His base offense level was set at 12 after a 2 level reduction for acceptance of responsibility.

Sargent was held accountable only for the amounts of cocaine that were directly attributable to him, which was between 0.05 kilograms and 1.9 kilograms.

---

* The Honorable Eugene Siler, Jr., Chief District Judge for the Eastern District of Kentucky, sitting by designation.

McCarvey was held accountable for 1.3 kilograms of cocaine. His base offense level was initially set at 26, then increased four levels for his role in the offense. McCarvey's possession of a machine gun during the offense led the court to increase the offense level by two for that special offense characteristic. His offense level was then reduced two levels for acceptance of responsibility, for a final level of 30.

Smith was sentenced to 120 months imprisonment, to be followed by five years supervised release; Sargent received 87 months imprisonment followed by five years supervised release; McCarvey received 151 months followed by four years supervised release; and Sams was sentenced to 16 months imprisonment, to be followed by three years supervised release. Smith, Sargent, and Sams were also ordered to pay a special assessment of $50.00 each, and McCarvey was ordered to pay a $100.00 special assessment. This timely appeal followed.

## II

■ Sams claims that the district court miscalculated his Guideline range. McCarvey and Sargent argue that the district court erred in failing to depart downward from the Guidelines. An appeal of a district court's failure to downwardly depart from the Guidelines is limited. An otherwise valid sentence is not appealable on the grounds that the defendants feel certain factors were not taken into account by the Guidelines. *United States v. Draper*, 888 F.2d 1100, 1105 (6th Cir.1989). Moreover, defendants may only appeal (1) sentences imposed in violation of the law, (2) sentences imposed as a result of an incorrect application of the Guidelines, or (3) upward departures from the Guidelines.

### A. McCarvey

■ McCarvey argues that because the presentence report suggested a range of 97–120 months, the district court erred in sentencing him to 151 months. At the sentencing hearing, the district court increased the base offense by two levels because of McCarvey's possession of a machine gun.

■ Upward departures are reviewed under a three-part test adopted in *United States v. Joan*, 883 F.2d 491, 494–96 (6th Cir.1989). The *Joan* test involves three steps:

> The first step is a question of law regarding whether the circumstances of the case are sufficiently unusual to justify departure. Step two involves a determination as to whether there is an actual factual basis justifying the departure.
>
> \* \* \* \* \* \*
>
> The third step is that, once the Court has assured itself that the sentencing court considered circumstances appropriate to the departure, the degree of departure must be measured by a standard of reasonableness on appeal.... [U]nless there is little or no basis for the trial court's action in departing, it must be upheld[.]

The district court stated that "people involved in the sale of drugs who manage to acquire Mac–10 machine guns have to be dealt with as severely as we possibly can deal with them[.]" J.App. (89–3833) at 39. In addition, in 1985, McCarvey was convicted of attempted breaking and entering in the Circuit Court of Macomb County, Michigan.

The district court characterized its departure as based on a "special offense characteristic." J.App. (89–3833) at 38. USSG Ch. 5, Pt. H permits sentencing judges to consider certain "specific offender characteristics," such as role in the offense (section 5H1.7) and criminal history (section 5H1.8). Moreover, section 5K2.6 of the Guidelines states: "If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range." Therefore, we conclude that the *Joan* test was satisfied in that the district court considered circumstances appropriate to departure and that increasing the offense level by two points was reasonable.

### B. Sargent

■ Sargent argues that the district court should have departed downward from

the Guidelines because "[it] should have been clear to the court that the Appellant could not possibly have planned or organized a drug conspiracy." Sargent's Brief at 3. Sargent, however, does not point to any facts in the record to support this assertion. At the sentencing hearing, Sargent said that he "accept[ed] full responsibility for the role that [he] played." J.App. (89–3835) at 17. His attorney admitted that the proper range for Sargent's offense level was between 70 and 87 months. Because the sentence imposed on Sargent was within the applicable range, we conclude that the sentence was not clearly erroneous under 18 U.S.C. § 3742(e).

#### C. Sams

Sams argues that the district court miscalculated his Guideline range because (1) there was no evidence that he knew about the firearms in the house, and (2) the district court failed to make findings of fact. Both contentions are without merit. First, the district court did *not* take the firearm into account with respect to Sams. The sentencing court stated that it did "not think that the government has sufficient evidence to increase by two points for the possible presence of that weapon." J.App. (89–3835) at 71. Sams implies that because other defendants were charged with firearms charges, the district court was somehow influenced to place Sams' sentence at the maximum end. We find this assertion to be without foundation. Sams' next argument is that the district court should have made findings of fact to support its upward departure. This contention is also without merit because the court did not depart from the range specified by the Guidelines. Sams' sentence, sixteen months, was within the acceptable range under the Guidelines.

### III

Smith argues that the district court failed to comply with USSG § 6A1.3(b) and Fed.R.Crim.P. 32 by not ruling on whether he was entitled to a 2 level reduction based on acceptance of responsibility. Section 6A1.3(b) states in full:

The court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1), Fed.R.Crim.P. (effective Nov. 1, 1987), notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence.

At the sentencing hearing, Smith's lawyer did mention the issue of a level reduction for acceptance of responsibility. However, on review of the sentencing hearing transcript, we fail to see how Smith's lawyer's muted comments regarding acceptance of responsibility now rise to the level of a "disputed sentencing factor" under USSG section 6A1.3(b). Smith's lawyer stated at the hearing:

Your Honor, I suppose the most important thing, when we entered the plea it was the government's recommendation that we would—or that the government would recommend 120 months, and, of course, that was the basis of entering the plea. So let me not squabble about what the role was, or what the acceptance of responsibility was, but simply ask this Court to accept the recommendation of the government made in the report, and made at the time of the plea.

\* \* \* \* \* \*

In any regard, let me ask you, if you will, your Honor, to accept the recommendation of the government.

J.App. (89–3835) at 47–48. Because Smith's lawyer did not appear to dispute the acceptance of responsibility issue at the hearing, the district court was not required to specifically address the issue. The district court was also not required to address the issue under Rule 32(c)(3)(D) because Smith failed to "allege any factual inaccuracy in the presentence investigation[.]" Fed.R.Crim.P. 32(c)(3)(D).

Nevertheless, Smith is not barred from appealing his sentence under 18 U.S.C. § 3742(c)(1), as the government argues. Section 3742(c)(1) states that a defendant who has entered into a plea agreement "that includes a specific sentence under rule 11(e)(1)(c) ... may not file a notice of appeal under paragraph (3) or (4) of

subsection (a) unless the sentence imposed is greater than the sentence set forth in such agreement[.]" Although 120 months is a "specific sentence under rule 11(e)(1)(c)", *see United States v. Newsome*, 894 F.2d 852, 855 (6th Cir.1990), Smith may still appeal his sentence under 18 U.S.C. § 3742(a)(1) or (a)(2), which permit appeals of sentences "imposed in violation of law" and "imposed as a result of an incorrect application of the sentencing guidelines[.]"[1]

 As noted above, however, Smith fails to point to specific factual errors in the presentence report which would have required the district court to find an acceptance of responsibility under section 6A1.-3(b) of the Guidelines. Smith must establish by a preponderance of the evidence that he is entitled to a reduction for acceptance of responsibility. *United States v. Urrego–Linares*, 879 F.2d 1234, 1239 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Smith articulates the following facts pointing to his acceptance of responsibility: (1) "he did not fight removal from Detroit to Cleveland," (2) he pled guilty, (3) he explained his role to the probation officer. However, even Smith concedes in his brief that he "refused to accept *any* responsibility for *any* managerial or leadership role in the 'overall' conspiracy." Smith Brief at 12 (emphasis added). As the Guidelines state, a guilty plea "does not, by itself, entitle a defendant to a reduced sentence under this section." USSG § 3E1.1(c). Therefore, we conclude that the district court's failure to reduce Smith's sentence because of acceptance of responsibility was not clearly erroneous, and therefore the sentence should be affirmed.

## IV

 Sams argues that because he was a minor or a minimal participant in the offense, his offense level should be reduced as provided for in section 3B1.2. Sams denies that he played more than a minor role in the conspiracy. He argues that the only evidence of his involvment was the informant's report, and that he would have received much more money as compensation had his involvment been more than minimal. The commentary to section 3B1.2 states that a reduction is appropriate if the defendant's role "makes him substantially less culpable than the average participant." Given Sams' role in the genesis of this conspiracy, and the fact that Sams' home was used as the base of operations, we do not think that Sams was "substantially less culpable than the average participant." *See United States v. Perry*, 908 F.2d 56 (6th Cir.1990). We conclude that the district court's assessment of Sams' role in the offense was not clearly erroneous.

## V

For the foregoing reasons, the sentences imposed by the district court are AFFIRMED.

---

1. Smith's plea agreement with the government apparently stated that there would be no downward adjustment for acceptance of responsibility. Government's Brief at 15. We do not find, however, that as a result of Smith's prior arrangement with the government he has waived any right to raise the issue on appeal. We therefore find inapposite the Fourth Circuit's opinion in *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir.1990), which held that "a defendant who pleads guilty, and expressly waives the statutory right to raise objections to a sentence, may not then seek to appeal the very sentence which itself was part of the agreement." In *Wiggins*, a defendant accepted a plea agreement which stated that he "expressly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742." *Id.* The government in the instant case does not argue that Smith agreed to such a blanket waiver, only that "it was contemplated by the plea agreement that there would not be any [downward] adjustment ... for acceptance of responsibility." Under these facts, we do not find any waiver of Smith's right to appeal this issue.

We also cannot accept, as the concurring opinion argues, that preservation of a defendant's right to appeal under section 3742 constitutes "sandbagging of district judges." The record does not show, and the government does not contend, that Smith formally agreed to waive any right to appeal his sentence. Absent an explicit waiver, we decline to read an implicit waiver into the comments of Smith's lawyer at the sentencing hearing. Furthermore, we fail to see how preserving a defendant's statutory right of appeal under section 3742 in any way impinges on the district court's authority to impose sentences under the Sentencing Guidelines.

DAVID A. NELSON, Circuit Judge, concurring.

I agree that the sentences imposed by the district court must be affirmed, but my reasoning differs in several respects from that of my colleagues.

Turning first to defendant McCarvey, I note that McCarvey's presentence report suggested that the appropriate offense level would be 28. The district court rejected that suggestion, concluding that the guidelines justified an offense level of 30. The two-level difference results from the district court's application of U.S.S.G. § 2D1.1(b), captioned "Specific Offense Characteristics," which says in subsection (1) that "[i]f a dangerous weapon (including a firearm) was possessed during the commission of the offense, increase [the offense level] by 2 levels." The presentence report did not recommend such a two-level increase, but Judge Batchelder—noting that she had "some difficulty with the way that the Probation Department has applied the guidelines"—felt that the increase was appropriate.

With a total offense level of 30, and given Mr. McCarvey's Criminal History Category (Category III), the sentencing table of the guidelines specified a range of 121–151 months' imprisonment. The district court did not depart from that range. Instead, the court imposed the maximum sentence—imprisonment for 151 months—that would be possible without a departure.[1]

On appeal, Mr. McCarvey presents only one question for us to decide:

"WHETHER THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO ONE HUNDRED FIFTY ONE (151) MONTHS IMPRISONMENT, WHEN A DOWNWARD DEPARTURE WAS WARRANTED."

In urging us to hold that the district court erred in not departing downward, Mr. McCarvey relies on *United States v. Joan,* 883 F.2d 491 (6th Cir.1989). It seems to me that *Joan,* where we affirmed a decision to depart upward, is inapposite here. A district court's decision to depart upward is appealable, see 18 U.S.C. § 3742(a)(3), but a decision not to depart downward is not appealable.

At least seven federal courts of appeal, including this one, have held that "the appellate review statute does not authorize review of a district court's discretionary refusal to depart from a properly determined guideline range...." U.S. Sentencing Commission Annual Report for 1989 at 15, citing *United States v. Tucker,* 892 F.2d 8 (1st Cir.1989); *United States v. Colon,* 884 F.2d 1550 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989); *United States v. Denardi,* 892 F.2d 269 (3d Cir.1989); *United States v. Rojas,* 868 F.2d 1409 (5th Cir.1989); *United States v. Draper,* 888 F.2d 1100 (6th Cir. 1989); *United States v. Franz,* 886 F.2d 973 (7th Cir.1989); *United States v. Fossett,* 881 F.2d 976 (11th Cir.1989). The guideline range was determined properly in the case at bar, and Mr. McCarvey's argument that the trial court ought to have departed downward is simply not cognizable on appeal.

Like defendant McCarvey, defendant Sargent presents only one assignment of error: that the trial court erred in imposing a sentence within the guideline range when a downward departure was "warranted." Again, such a claim is not cognizable on appeal.

Defendant Sams offers three assignments of error: (1) that his offense level under the guidelines should have been reduced because Sams was either a "minimal" participant in the criminal activity or a "minor" participant therein; (2) that he should not have received an "additional sentence" because of the firearm possessed by another defendant; and (3) "A Court may not depart from the use of the Federal Sentencing Guidelines without specific find-

---

**1.** Perhaps the district judge could have increased the sentence above the authorized guideline range pursuant to U.S.S.G. § 5K2.6, but she did not purport to do so. She decided, rather, that the case "must be sentenced at the maximum end of the guidelines." J.App. (89–3833) at 39.

ings of fact to indicate why a departure is being made."

As to Mr. Sams' first assignment of error (which is dealt with in Part IV of this court's opinion), I agree with my colleagues that the district court's conclusion regarding the extent of Sams' participation in the criminal activity was not clearly erroneous.

As to the second assignment of error (Part II–C of this court's opinion), Mr. Sams' counsel told the district court prior to the imposition of sentence that "Mr. Sams, obviously knew [of] the firearm being present and could reasonably foresee this conduct." Whether the district court took this circumstance into account in deciding to sentence Mr. Sams at the upper end of the guideline range is immaterial, in my view; the court was certainly free to do so if it wished.

I agree with this court's disposition of Mr. Sams' third assignment of error; the district court had no occasion to make findings of fact to justify a departure that never occurred.

With regard to Mr. Smith, finally, the record shows that Smith's lawyer, speaking in open court, clearly and unambiguously asked the district judge to accept the government's recommendation of a 120–month sentence. The judge did exactly what the defendant asked her to do; she imposed a sentence of 120 months. The announcement of the sentence evoked the following response from the defendant's lawyer: "We are most grateful, your Honor. Thank you." I frankly do not understand how the defendant may now be heard to contend that the judge committed reversible error by complying with the defendant's express request.

If the defendant thought that a 120–month sentence would be in violation of the law or that it reflected an incorrect application of the sentencing guidelines, he had an obligation to tell the district judge so. We usually do not countenance the sandbagging of district judges, and I trust that our publication of this run-of-the-mine *per cu-*

*riam* opinion will not lead anyone to think we are trying to encourage such a practice.