968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry A. JONES and Arturo Gonzales Aguilar, Defendants-Appellants.
 Nos. 91-1561, 91-1563.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1992.
 
 Before KEITH and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Arturo Gonzales Aguilar, Jr., appeals his sentence imposed pursuant to a guilty plea to a charge of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Defendant Jerry A. Jones appeals his conviction and sentence for conspiracy to distribute, and possession with intent to distribute, marijuana in violation of 21 U.S.C. §§ 841 and 846 and for possession, and aiding and abetting in possession of, marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.
 
 I.
 
 2
 On October 8, 1990, Royal Smith and defendant Jerry Jones left Saginaw, Michigan for Des Moines, Iowa in a 1980 Chevrolet Impala that the two men borrowed from Smith's brother-in-law, defendant Arturo G. Aguilar, Jr.
 
 
 3
 As they had done in the past, Smith and Jones drove to Iowa to "harvest" marijuana which grew in the wild. The men stuffed the marijuana into green duffel bags, covered the duffel bags with plastic garbage bags to hide the smell of the marijuana, and then drove back to Saginaw to process and sell the marijuana. Smith and Jones returned to Saginaw early in the morning of October 11, 1990, and eventually proceeded to Smith's apartment to unload and process the marijuana. Smith and Jones backed the 1980 Chevrolet Impala up to Smith's apartment and carried the bags of marijuana from the trunk of the car into Smith's basement. Shortly thereafter, Smith gave Aguilar one of the five bags filled with marijuana to satisfy a debt that he owed to Aguilar.
 
 
 4
 Detectives from the Saginaw County Sheriff's Department, who were acting on an anonymous tip, went to the area of the apartment to conduct surveillance. The detectives saw Aguilar carry one heavy garbage bag from the house to a van. Aguilar then loaded the garbage bag into the van and drove off. The detectives alerted other officers, who stopped the van. Aguilar consented to a search of the vehicle, and the officers found the duffel bag filled with marijuana.
 
 
 5
 Meanwhile, the detectives who continued watch over Smith's apartment, saw Smith and Jones leave the residence, get into the 1980 Chevrolet and drive off. The detectives followed and ultimately stopped the Impala. An ensuing search revealed four plastic baggies filled with marijuana. Jones was then placed under arrest. A subsequent inventory search of the automobile resulted in the seizure of more marijuana found inside the trunk.
 
 
 6
 Thereafter, Smith consented to a search of his residence which led to the seizure of various materials used for processing marijuana and four duffel bags stuffed with marijuana. The defendants stipulated that this material was, indeed, marijuana.
 
 
 7
 On November 8, 1990 a grand jury in the Eastern District of Michigan returned a two-count indictment against Jones, Smith and Aguilar. Count one charged all three of the defendants with conspiring to distribute, and possess with intent to distribute, marijuana in violation of 21 U.S.C. §§ 841 and 846. Count two charged that, on October 11, 1990, all three men possessed, and aided and abetted each other in possessing, about 50 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Smith and Aguilar entered guilty pleas to the conspiracy charge in count one, but Jones chose to go to trial.
 
 
 8
 Aguilar signed a Rule 11 plea agreement and entered a guilty plea to count one of the indictment on January 3, 1991. At Aguilar's sentencing hearing on April 22, 1991, the district court set Aguilar's base offense level at 20, then reduced this figure by two-levels for acceptance of responsibility, and finally gave Aguilar an additional two-level reduction for playing a minor role in the offense. Having established an adjusted offense level of 16, the district court combined the offense level with Aguilar's criminal history category of III to arrive at a sentencing range of 27 to 33 months imprisonment. The district court sentenced Aguilar to a 27-month prison term on April 22, 1991. Aguilar filed a timely notice of appeal on May 1, 1991.
 
 
 9
 At the conclusion of defendant Jones' four-day trial, he was convicted on both counts of the indictment. Jones, however, argues that his conviction was invalidated by several errors which occurred during trial. One alleged error occurred during closing argument, when the district court refused to allow defendant's counsel to refer to the government's failure to call Rosaline Smith as a witness. During closing, counsel stated:
 
 
 10
 Number two, Rosaline Smith, that's Royal's wife. Where is Rosy Smith? Where is she? Any reason the government didn't call her?
 
 
 11
 The government objected, and the district court sustained the objection, eventually ruling that when counsel intends to argue to the jury that an adverse inference should be derived from the absence of a witness, an advance ruling from the trial court must be obtained. Counsel for defendant then argued that he would "abide by the court's ruling" and made a "motion for a mistrial on the grounds of ineffective assistance of counsel." The court refused to grant the mistrial.
 
 
 12
 Furthermore, Jones argues that the government improperly provided the government's witness Royal Smith with a copy of his prior grand jury testimony, allowed him to read it on the stand, and then elicited incriminating answers from Smith. Jones argues that this procedure served to impermissibly allow the entry of Smith's grand jury testimony into evidence in violation of the Confrontation Clause.
 
 
 13
 Jones was convicted and the district court sentenced him on May 1, 1991 to concurrent 135-month prison terms on the two counts of the conviction. This sentence was based on Jones' responsibility for 1,000 kilograms of marijuana. Jones never objected to his sentence as calculated in the presentence report, although the court gave him the opportunity to raise any objections. Jones filed a timely notice of appeal on May 8, 1991.
 
 II.
 
 14
 During defendant Jones' trial, co-conspirator Royal Smith testified as a witness for the government. During direct examination, Smith was asked the following question: "Did the defendant Jones ever tell you who some of his customers were, sir?" Trial Transcript at 39-40. Smith responded "No." The United States Attorney gave Smith the transcript of his grand jury testimony, wherein he named Jones' customers, and asked him to review it to refresh his memory. The government then repeated the above question and Jones' counsel objected. Over the defendant's objection, Smith named two people whom Jones had identified as customers. Jones now argues that the government was improperly permitted "to introduce Smith's testimony before the grand jury.... [in violation of] the Confrontation Clause." We do not agree.
 
 
 15
 The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him." U.S. Const. amend. VI. The "literal right to 'confront' witnesses at the time of trial" serves to promote fairness and reliability by ensuring that witnesses testify under oath and are submitted to cross-examination, and by permitting the jury to observe a testifying witnesses' demeanor. Delaware v. Fensterer, 474 U.S. 15, 18 (1986); United States v. Gomez-Lemos, 939 F.2d 326, 329 (6th Cir.1991) (citing California v. Green, 399 U.S. 149 (1970)). "Where the declarant is not absent, but is present to testify and to submit to cross-examination ... admission of his out-of-court statements does not create a confrontation problem." California v. Green, 399 U.S. at 162.
 
 
 16
 In the present case, as required by Green, defendant Jones was given the opportunity to fully cross-examine his co-defendant Smith. This satisfies any confrontation problems which Jones argues were the result of the government's attempt to admit Smith's grand jury testimony into evidence. Furthermore, the grand jury testimony was never admitted into evidence through Smith's testimony. Instead, Smith merely used the transcript of the grand jury proceedings to refresh his recollection. His memory thereby refreshed, he was able to testify first-hand about the names of Jones' customers. Since there was no out of court statement, there was no confrontation problem. Id. at 156-58.
 
 III.
 
 17
 Defendant Jones next challenges the district court's refusal to allow him to mention, during closing argument, that the government failed to call a witness in support of its case. Presumably, the defendant sought to imply that had this witness been called, her testimony would have been unfavorable to the government. The district court sustained the government's objection to the comment and instructed the jury to disregard it. Jones now argues that this comment was merely intended to point out that the government might not have met its burden of proof and that the court erred in instructing the jury to disregard it.
 
 
 18
 "When counsel for either side intends to argue to the jury for an adverse inference to be derived from the absence of witnesses, an advance ruling from the trial court should be sought and obtained." United States v. Blakemore, 489 F.2d 193, 196 (6th Cir.1973). Approval will be granted by the trial court only if the party against whom the inference is drawn was capable of producing that witness and where the testimony of the witness would elucidate issues in the case. Id. at 195. A district court's decision on this evidentiary issue is reviewed under an abuse of discretion standard. Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156-57 (6th Cir.1988).
 
 
 19
 Jones first argues that Blakemore does not apply where the government fails to call a witness and the defendant seeks to draw an adverse inference against the government. Rather, Jones argues, Blakemore applies only to safeguard the rights of defendants. However, we do not believe that Blakemore should be read as narrowly as Jones suggests. Although United States v. Martin, 696 F.2d 49 (6th Cir.), cert. denied, 460 U.S. 1073 (1983) and United States v. Burkhart, 501 F.2d 993 (6th Cir.1974), cert. denied, 420 U.S. 946 (1975), both cited by Jones, are cases wherein this court applied the Blakemore rule against the government, we do not believe that either of those cases sought to restrict the rule in the fashion suggested by Jones. Instead, in those cases, the government just happened to be the party violating the rule. There is no language in either opinion which proposes to limit Blakemore to the government and not the defendant. See also United States v. Keplinger, 776 F.2d 678, 702-03 (7th Cir.1985) (restriction on drawing adverse inference because of missing witness applies to government as well as defendant), cert. denied, 476 U.S. 1183 (1986); United States v. Coe, 718 F.2d 830, 841 (7th Cir.1984) (same); United States v. Cohen, 631 F.2d 1223, 1227 (5th Cir.1981) (same).
 
 
 20
 Next, Jones argues that Blakemore applies only where counsel specifically asks the jury to draw an inference from the fact that a witness was not called. In the present case, Jones never asked the jury to draw an inference. During closing argument, counsel merely stated:
 
 
 21
 Number two, Rosaline Smith, that's Royal's wife. Where is Rosy Smith? Where is she? Any reason the government didn't call her?
 
 
 22
 At this point, the government raised an objection and the district court ordered Jones' counsel to "move on to another substantive argument."
 
 
 23
 Although the Blakemore rule generally applies only where counsel specifically requests the jury to draw an inference, this court has held that "a strong implication, rather than a direct request, could under some circumstances invite the jury to draw an adverse inference." Martin, 696 F.2d at 52. However in a subsequent case, MacNaughton v. United States, 888 F.2d 418 (6th Cir.1989), this court essentially disregarded Martin's opinion that "a strong implication" would suffice and held that "this court has essentially limited the advance ruling requirement to cases in which [counsel] specifically requests the jury to draw an adverse inference." Id. at 423.
 
 
 24
 However, Martin is still the law of this circuit, and is controlling in the present case, even if it was questioned by MacNaughton. Therefore, we believe it should be followed.
 
 
 25
 In our view, we believe that the clear import of Jones' counsel's statement was that the jury should draw an adverse inference from the government's failure to call Rosy Smith as a witness. Although counsel did not specifically ask that such an inference be drawn, the statement: "Any reason the government didn't call her?" strongly implies to the jury that her testimony would have been adverse to the government. Therefore, the district court properly exercised its discretion in prohibiting defendant from commenting on the government's failure to call a witness during closing argument. Any prejudice which defendant may have suffered is mollified by the realization that had the witness truly been in possession of exculpatory testimony, it was within the defendant's power to call her to testify.
 
 IV.
 
 26
 Jones' counsel made a motion for mistrial in the district court arguing that his failure to appreciate the significance of the Blakemore rule deprived his client of the effective assistance of counsel. The district court denied the motion, holding that his "minor misstep ... during one portion of the more extensive final argument does not in any reasonable sense result in unfairness to the defendant." On appeal, Jones argues "the government cannot have it both ways: if the Blakemore argument stands, then counsel's trial strategy was based upon error. If the argument does not stand, reversal is mandated [under Blakemore ]."
 
 
 27
 A defendant may raise ineffective assistance of counsel claims on direct appeal where the error was raised in the district court and where "the record is adequate to assess the merits of the defendant's allegations." United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). Where raised on direct appeal, ineffective assistance of counsel is evaluated according to the two-prong Strickland v. Washington test which traditionally applies to post conviction proceedings under 28 U.S.C. § 2255.
 
 
 28
 The standard for evaluating ineffective assistance of counsel claims under Strickland v. Washington, 466 U.S. 668 (1984) requires first that the defendant "show that counsel's performance was deficient," that is "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense," id., to such an extent that defendant was deprived of a fair trial "whose result was reliable." Id.
 
 
 29
 It is abundently clear that Jones' ineffective assistance of counsel claim has not met the Strickland test, and that his counsel's performance did not fall below sixth amendment standards.
 
 V.
 
 30
 Jones next argues that the district court incorrectly based his sentence on drug quantities which were not part of the conspiracy charged in the indictment. Jones contends that "the indictment period of the conspiracy was in October of 1990" and that defendant is not responsible for drugs obtained "on dates outside the conspiracy charged" in the indictment. Appellant Jones' Brief at 10. He also argues that any trips to Iowa made prior to October 1990 were "not part of a continuing conspiracy, but [were] a series of them." Id. at 11. This issue is not properly before us on appeal.
 
 
 31
 In the proceeding below, Jones did not preserve his right to appeal this issue as he failed to object to the sentence in the district court. In United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991), cert. denied, 60 U.S.L.W. 3815 (1992), this court held that "a defendant must first present the claim in the district court before we can entertain the alleged misapplication of the Guidelines on appeal." Id. (emphasis original) (citing 18 U.S.C. § 3742(a) "A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence ... (2) was imposed as the result of an incorrect application of the guidelines."). Therefore, Jones waived the right to appeal his sentence by not objecting below, and we need not consider this Guidelines question on appeal.
 
 VI.
 
 32
 Finally, defendant Aguilar argues that the district court erred in refusing to depart downward and sentencing him below the guideline range. Aguilar urges this court to consider several mitigating factors, including his favorable testimony, his history of alcohol and drug abuse, the fact that he is employed and supporting a large family, and his positive contributions to the community.
 
 
 33
 However, United States v. Draper, 888 F.2d 1100 (6th Cir.1989) precludes this court from reviewing a district court's refusal to depart downward as long as the defendant's sentence is within the applicable guideline range. If the sentence is within the Guidelines, and otherwise valid, it is not appealable on the grounds that "the sentencing judge failed to depart from the Guidelines on account of certain factors which the defendant feels were not considered by the Guidelines and should reduce his sentence." Id. at 1105; United States v. Hopper, 941 F.2d 419, 422 (6th Cir.1991); United States v. Gregory, 932 F.2d 1167, 1168-69 (6th Cir.1991); United States v. Smith, 918 F.2d 664, 667 (6th Cir.1990), cert. denied, 112 L.Ed. 1192 (1991). Because the sentence was within the guideline range, we have no jurisdiction to review Aguilar's request for a downward departure, and therefore affirm the district court's sentencing determination.
 
 VI.
 
 34
 For the foregoing reason, the decision of the district court is hereby AFFIRMED.