976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John W. SANFORD, Defendant-Appellant.
 No. 91-3944.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1992.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges, and COOK, Chief District Judge*.
 PER CURIAM.
 
 
 1
 The defendant filed this appeal after he was convicted of possession of cocaine with intent to distribute, carrying a firearm during and in relation to the commission of a drug felony, and being a felon in possession of a firearm. He argues that the district court erred when it refused to suppress evidence seized from his apartment and that the court should have reduced his offense level to reflect his allegedly minimal participation in the offense. We affirm.
 
 I.
 
 2
 On September 27, 1990, Toledo police arrested the defendant, John Sanford, during a search of his apartment. The police found cocaine, firearms, and drug paraphernalia during the search.
 
 
 3
 Toledo Police Detective Neil Miller had obtained a search warrant earlier in the day. According to Miller's affidavit, Detective Mark Zielinski had received complaints that a man named John was selling cocaine from the upper apartment of the house at 618 Mulberry Street.
 
 
 4
 In the week before Miller obtained the warrant, Zielinski visited the area at least three times. On each occasion, Zielinski spotted several known cocaine-using prostitutes loitering in front of the house, and he observed heavy pedestrian traffic on the stairs leading toward the top apartment. He noted that none of these visitors stayed more than a few minutes.
 
 
 5
 According to Detective Miller, an informant stated that "John" would not sell less than $50 worth of cocaine at a time. On September 19, the police sent a "very reliable" informant to the top apartment to attempt to purchase $20 worth of crack. According to the informant, the man who answered the door refused, stating, "[N]o we don't even mess with that amount."
 
 
 6
 One week later, the police sent another "very reliable" informant to purchase $50 worth of cocaine. According to this second informant, "John" told him to come back later after he finished cooking cocaine into crack.
 
 
 7
 After obtaining the warrant from a state court judge, Detectives Miller and Tim Noble went to Sanford's apartment, intending to make an undercover buy before executing the warrant. After the officers knocked at Sanford's door, they heard a voice yell, "Get the fuck away from the door." Sanford then opened the door a few inches without unfastening the security chain, looked at Miller and Noble, again yelled for them to get away from the door, and slammed the door shut. While the door was open, Miller observed what appeared to be the butt of a gun protruding from Sanford's waistband.
 
 
 8
 Noble then yelled, "Police, we have a search warrant," waited approximately one second, and kicked the door in. Sanford ran into a bedroom. When the officers entered the bedroom, they saw Sanford leap onto the bed from the direction of a closet. After arresting Sanford, the officers found an empty .357 magnum revolver in the closet and six .357 shells on the bed. In addition, the police seized a shotgun, powdered and crack cocaine, cash, and drug paraphernalia.
 
 
 9
 A federal grand jury charged Sanford with possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); knowingly carrying a firearm during and in relation to the commission of a drug felony, in violation of 18 U.S.C. § 924(c)(1); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After the district court denied Sanford's motion to suppress evidence seized in the search, the case proceeded to trial. The jury convicted Sanford on all three counts.
 
 
 10
 At sentencing, the court denied Sanford's request for a reduction for his role in the offense. The court then sentenced Sanford to 300 months on the cocaine possession count, five years for carrying a firearm during a drug felony, and 180 months for being a felon in possession of a firearm.[1] Sanford must serve the first two sentences consecutively, but the third sentence will run concurrently with the other two. Therefore, Sanford was actually sentenced to imprisonment for 360 months. This appeal followed.
 
 II.
 
 11
 Sanford maintains that the district court erred when it denied his motion to suppress. He first contends that Miller's affidavit failed to establish probable cause for the search. Second, Sanford argues that the evidence must be suppressed because Noble kicked in the door before he could allow the officers in. We consider these two arguments in turn.
 
 A.
 
 12
 Sanford argues that Miller's affidavit fails to establish probable cause because it contains insufficient information to establish the dates of certain events and because it contains no information to establish the reliability of the informants. Sanford maintains that the affidavit is so deficient that the officers could not have relied upon the warrant in good faith.
 
 
 13
 The government argues that Sanford waived any attack on the sufficiency of the affidavit by failing to raise the issue in the district court. Although Sanford primarily advanced other grounds in his motion to suppress, that motion could be read to attack the sufficiency of the affidavit. Therefore, we will consider his arguments on appeal.
 
 
 14
 The probable cause required for a search warrant is evaluated by a flexible standard that requires the issuing magistrate to determine, considering the totality of the circumstances, whether there is a fair probability that the contraband or evidence of a crime will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238-39 (1983). We review the magistrate's probable cause determination with great deference. United States v. Davidson, 936 F.2d 856, 859 (6th Cir.1991).
 
 
 15
 We conclude that Detective Miller's affidavit supported the state judge's probable cause determination. On three occasions, Detective Zielinski observed numerous persons walk up the stairs toward Sanford's apartment and return a few minutes later. He also saw known cocaine-using prostitutes loitering in front of the house. These observations tended to confirm the reports that the man in the top apartment was running a crack house. This conclusion was bolstered by the informants' two attempts to buy cocaine.
 
 
 16
 Although these facts do not prove beyond doubt that Sanford was selling cocaine, an affidavit for a search warrant need not contain such ironclad proof. See United States v. Blakeney, 942 F.2d 1001, 1025 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 881 (1992). We find that the facts in the affidavit amply support a finding that there was a fair probability that cocaine would be found in Sanford's apartment.
 
 
 17
 Sanford argues that the affidavit is vague as to dates. We observe, however, that the affidavit specifies the three dates on which Zielinski observed the house and the two dates on which the police sent informants to the apartment to attempt to buy cocaine. We find that the affidavit is sufficiently precise as to the timing of events.
 
 
 18
 We also reject Sanford's argument that the affidavit is fatally deficient because it fails to establish the reliability of the informants who attempted to buy cocaine. In Gates, the Court rejected any rigid requirement that the affidavit establish the reliability of the informants. 462 U.S. at 234-35.
 
 
 19
 While the failure to state the basis for an informant's reliability weakens an affidavit, it does not render the warrant per se invalid. Here, the information gathered by Zielinski and the fact that two informants reported that "John" made incriminating statements when they attempted to buy cocaine amply support the state judge's probable cause determination.[2]
 
 B.
 
 20
 Sanford next argues that the officers illegally entered his apartment without giving him time to open the door. Sanford claims that the officers' conduct violated Ohio law. Since Sanford was charged in federal court, Ohio law is inapplicable, and we review the officers' actions for compliance with the Fourth Amendment. See United States v. Allen, 954 F.2d 1160, 1167-68 (6th Cir.1992).
 
 
 21
 An officer armed with a search warrant need not wait for the occupant of a home to refuse admission if exigent circumstances justify an immediate entry. United States v. Nabors, 901 F.2d 1351, 1354 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 192 (1990). One such type of exigency is a threat to the searching officers' safety. See United States v. Streeter, 907 F.2d 781, 789 (8th Cir.1990).
 
 
 22
 Noble and Miller initially knocked on Sanford's door without identifying themselves. When Sanford opened the door to look at the officers, both men observed what appeared to be the butt of a revolver in Sanford's waistband. Noble testified that he had been warned that Sanford always carried a gun. Sanford angrily yelled for Noble and Miller to get away from the door and slammed it shut.
 
 
 23
 We find that these circumstances created an exigency that justified Noble's decision to kick the door in approximately one second after announcing that he had a search warrant. Accordingly, we affirm the district court's denial of Sanford's suppression motion.
 
 III.
 
 24
 Sanford contends that the district court erred in sentencing him by refusing to consider his claim that he was a minor or minimal participant in the offense. According to Sanford, the court erroneously concluded that this reduction was unavailable because no other persons had been indicted along with Sanford.
 
 
 25
 Our review of the sentencing hearing reveals that Sanford did not specifically raise the issue of minimal participation. Instead, he asked for a reduction because he was not the sole participant in the offense.
 
 
 26
 The court concluded that Sanford's request was confused and construed it as a request for a reduction as a minimal participant. See U.S.S.G. § 3B1.2. The court then stated, "I see no reason for reduction here." Contrary to Sanford's characterization of the court's remarks, the court did not hold that the reduction was always unavailable to a defendant who is the only indictee.
 
 
 27
 Under section 3B1.2, the defendant bears the burden to establish that he or she was a minimal or minor participant. United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 565 (1990). We review for clear error the district court's decision to deny the reduction. Id.
 
 
 28
 Sanford presented no evidence to establish that he was a minor or minimal participant. The evidence in the record reveals that Sanford sold cocaine out of his own apartment. This evidence, standing alone, is sufficient to conclude that Sanford was not a minor or minimal participant in the offense. Cf. United States v. Smith, 918 F.2d 664, 669 (6th Cir.1990) (affirming denial of reduction to defendant whose home was base of cocaine distribution conspiracy), cert. denied, --- U.S. ----, 111 S.Ct. 1088 (1991). Accordingly, we affirm the denial of the reduction.
 
 
 29
 AFFIRMED.
 
 
 
 *
 Honorable Julian A. Cook, Jr., Chief District Judge of the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The 300-month term is within the guideline range for that offense, given Sanford's status as a career criminal (Criminal History Category VI). The five-year and 180-month terms are mandatory minimum sentences
 
 
 [2]
 Since we find that the affidavit established probable cause for the search, we need not consider whether the officers executed the warrant with a good faith belief that the warrant was valid. See United States v. Leon, 468 U.S. 897 (1984)