992 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul D. JOHNSON (92-5459) and C.D. Johnson (92-5477),
Defendants-Appellants.
 Nos. 92-5459, 92-5477.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1993.
 
 Before: NELSON and SILER, Circuit Judges, and MILES, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Defendant-appellant C.D. Johnson, who entered a conditional plea of guilty to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 and one count of use of a firearm during and relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), appeals the district court's denial of his motion to suppress evidence obtained during a search of his residence conducted pursuant to an invalid search warrant. Defendant-appellant Paul D. Johnson, nephew of C.D. Johnson, appeals his sentence, imposed pursuant to a plea of guilty, to a charge of conspiracy to possess marijuana in violation of 18 U.S.C. § 846. For the reasons which follow, we affirm both the denial of C.D. Johnson's motion to suppress and the sentence imposed on Paul Johnson.
 
 I. FACTS
 
 2
 At 8:55 a.m. on December 13, 1989, officers in the DeKalb County Sheriff's office monitoring a local "crime stoppers" line received a telephone call from an unknown individual. The anonymous caller advised that Paul and C.D. Johnson had been transporting drugs to Knoxville, Tennessee bi-weekly, and also advised that marijuana was being stored in the freezer at C.D. Johnson's residence. At 10:45 a.m., the officers received a second call on the "crime stoppers" line, ostensibly from the same individual. This time, the caller--still unidentified--again advised that marijuana was currently being stored in the freezer at C.D. Johnson's residence.
 
 
 3
 Armed with this information, Deputy Sheriff Don Adamson prepared an affidavit in support of a search warrant. The affidavit stated in pertinent part:
 
 
 4
 Information was recevied [sic] by affiant earlier this date from a crime stoppers line that is monitored on a regular basis. This information consisted of the following facts: Call received [sic] at 8:55 a.m. that Paul and C.D. Johnson have been transporting drugs to Knoxville bi-weekly and that marijuana is being stored in the freezer at C.D. Johnson's residence. Another call was received [sic] on the same crime stoppers line at 10:45 a.m. this date that marijuana was now being stored in the freezer in C.D. Johnson's residence. Affiant has personally found marijuana growing behind the within named residence in the past 18 months. Further, affiant knows of the past reputation of C.D. Johnson and of similar allegations on this subject in times past. Affiant has verified the information received [sic] as being the residence of C.D. Johnson on Hwy 70E and that Paul Johnson is a resident thereof. Crime Stoppers is an independent phone line conducted from the DeKalb Co. Courthouse receiving information [illegible] criminal activity in DeKalb Co.
 
 
 5
 Adamson presented his affidavit to Judicial Commissioner Charlie Mai Maxwell. Although she had no legal training, Maxwell had occupied this position for 10 years. She discussed the basis for probable cause with Adamson, and issued a warrant for the search of C.D. Johnson's property at 2:33 p.m. on December 13, 1989.
 
 
 6
 A search of C.D. Johnson's property later that day yielded, among other things, 2.32 kilograms of marijuana, several containers holding marijuana seeds, a set of scales, smoking paraphernalia, a growing heater, fan, growing lights, cords, a grow bin, and numerous firearms. Both C.D. and Paul Johnson were arrested and charged in the General Sessions Court in DeKalb County, Tennessee. These state charges were subsequently dismissed. On April 10, 1991, a federal grand jury returned a five-count indictment. Count One charged both Johnsons with conspiracy to possess with intent to distribute or manufacture marijuana, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Count Two charged both men with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Three charged both men with manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Four charged C.D. Johnson with possession of firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Finally, Count Five charged C.D. Johnson, who had previously been convicted of a felony in a Tennessee court, with being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).
 
 
 7
 C.D. Johnson moved for suppression of the evidence seized in the search. The district court denied the motion, finding that there was no probable cause for the issuance of the warrant, but concluding that the warrant nonetheless met the requirements of United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Pursuant to a written plea agreement in which he reserved the right to appeal the district court's denial of his suppression motion, C.D. Johnson pled guilty to Counts One and Four of the indictment. See Fed.R.Crim.P. 11(a)(2). The district court sentenced him to 51 months imprisonment on Count One, and imposed a consecutive sentence of five years imprisonment on Count Four, the firearms charge. The court also imposed a three-year term of supervised release following confinement.
 
 
 8
 Although the offenses with which Paul Johnson was charged were both felonies, pursuant to a written plea agreement, Paul pled guilty to a lesser included misdemeanor offense of conspiracy to possess marijuana, in violation of 18 U.S.C. § 846. However, the plea agreement also provided that sentence was to be imposed as though he had pled guilty to the felony charge. The district court sentenced Paul to 12 months imprisonment, with a one-year term of supervised release upon release from confinement.
 
 II. C.D. JOHNSON
 
 9
 C.D. challenges the district court's denial of his motion to suppress. He contends that the district court erred in concluding that although the affidavit given by Deputy Adamson failed to establish probable cause under the "totality-of-the-circumstances" test set forth in Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the evidence recovered in the search was not subject to suppression, based on the good faith exception to the exclusionary rule announced in Leon, 468 U.S. at 913. The government has not challenged the district court's determination that the warrant was invalid. Therefore, we must decide whether the district court properly concluded that the evidence was not subject to suppression. Our review of the district court's determination that officers reasonably and in good faith relied on a search warrant as required by Leon is de novo. United States v. Bowling, 900 F.2d 926, 930 (6th Cir.), cert. denied, 498 U.S. 837 (1990).
 
 
 10
 In Leon, the Supreme Court held that where officers rely in an objectively reasonable fashion on a search warrant issued by a neutral magistrate which is subsequently found to be invalid, the Fourth Amendment exclusionary rule does not require suppression of the fruits of the search. 468 U.S. at 905; Bowling, 900 F.2d at 931. This good faith inquiry is objective, being "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances may be considered." Leon, 468 U.S. at 922-23 n. 23. However, by imposing this objective standard, "Leon indicates that courts evaluating an officer's conduct must charge the officer with a certain minimum level of knowledge" of the Fourth Amendment requirements. United States v. Savoca, 761 F.2d 292, 295 (6th Cir.), cert. denied, 474 U.S. 852 (1985).
 
 
 11
 In Leon, the Court identified four situations in which suppression nonetheless remains an appropriate remedy: (1) where the supporting affidavit contains a knowing or reckless falsehood, 468 U.S. at 923; (2) where the issuing magistrate abandons his or her judicial function, id.; (3) where the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," id. (quoting Brown v. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 2265-66, 45 L.Ed.2d 416 (1975)); and (4) where the warrant itself is facially deficient, for example, in failing to describe with particularity the place to be searched or the objects to be seized, 468 U.S. at 923.
 
 
 12
 C.D. does not contend that the first situation--a knowing or reckless falsehood contained in the supporting affidavit--is applicable here. Nor does he contend that the warrant itself was facially deficient in failing to particularize the place to be searched or the things to be seized. Rather, C.D. contends that the remaining two exceptions identified in Leon are applicable in this case: (1) lack of neutrality of the magistrate, and (2) the warrant was so lacking in indicia of probable cause as to render the officer's belief in probable cause entirely unreasonable.
 
 
 13
 An issuing magistrate must meet two tests: (1) he must be neutral and detached, and (2) he must be capable of determining whether probable cause exists. Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972). "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." Id. The district court found that Commissioner Maxwell did not merely rubber stamp the warrant; instead, she independently reviewed Adamson's affidavit for probable cause. This conclusion is supported by Maxwell's testimony that she discussed probable cause with Deputy Adamson before issuing the warrant. C.D. nonetheless makes a combined attack on Maxwell's neutrality and capability, relying heavily on the fact that Maxwell had no legal training, other than her on-the-job experience in reviewing affidavits made by law enforcement officers for probable cause. According to C.D., this lack of formal legal training renders Maxwell nothing more than an "adjunct law enforcement officer" or "rubber stamp," recognized as unacceptable in Aguilar v. Texas, 378 U.S. 108, 111 (1964) and in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979).
 
 
 14
 "[I]t has never been held that only a lawyer or judge could grant a warrant, regardless of the court system or the type of warrant involved." Shadwick, 407 U.S. at 348. Indeed, as the Court noted in Gates, warrants have "long been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of 'probable cause.' " 462 U.S. at 235.[1] Maxwell's lack of formal legal training, therefore, does not render her unable to perform her duties. Nor was there any evidence presented suggesting that Maxwell had any connection with law enforcement officers--other than that necessarily required for making probable cause determinations--which would prevent her from exercising independent judgment. Under the circumstances, we conclude that the district court did not err in concluding that the "neutral and detached magistrate" exception to Leon did not apply in this case.
 
 
 15
 We also reject C.D.'s contention that the fruits of the search should be suppressed because the warrant was based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Leon, 468 U.S. at 923 (quoting Brown, 422 U.S. at 610-611). We note that anonymous tips--standing alone--will seldom be sufficient to support a search or arrest warrant, Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); Gates, 462 U.S. at 237. We also believe that reasonably well-trained officers should be aware of this principle. However, we do not find this to be one of those rare cases in which the officer involved should have known that the search was illegal despite the magistrate's authorization. Leon, 468 U.S. at 922 n. 23. The officer's affidavit in this case did more than repeat an anonymous tip; it provided additional facts which could be viewed as corroboration, including a personal, albeit somewhat outdated observation of similar illegal activity on the Johnson premises. As the Court recognized in Gates, anonymous tips, "particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.' " 462 U.S. at 237-238. Accordingly, we believe that the officer in this case was justified in relying on the magistrate to determine whether probable cause was established.
 
 
 16
 As the Court noted in Gates, the task of the issuing magistrate in making probable cause determinations "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. at 238. While a "bare bones" affidavit which contains mere conclusory statements will not support a probable cause determination, as the district court in this case properly noted, the affidavit in this case does contain facts, not mere conclusions, and does provide some evidence or indicia that evidence of criminal activity would be found at the Johnson residence.[2]
 
 
 17
 C.D. relies heavily on United States v. Baxter, 889 F.2d 731 (6th Cir.1989), in which this court declined to apply the Leon good faith exception where officers acted in reliance on information received by an anonymous tipster. However, in that case, the salient factor was that the officer had misrepresented the nature of the caller in his affidavit; he had falsely stated that the caller was a "confidential informant" when in fact the caller was anonymous. The court found this "knowing misstatement" about the nature of the informant to be critical. 889 F.2d at 734.[3] Because of the obvious applicability in Baxter of the first Leon exception--the affidavit contained a "knowing or reckless falsity"--we do not find Baxter to be controlling, despite the court's characterization of the affidavit in that case as a " 'bare bones' affidavit within the meaning of footnote 24 in Leon[.]" 889 F.2d at 734. Moreover, in that case, the officer "had to realize that the source of the information against defendant was an unknown party who was unavailable and could not be demonstrated to be 'reliable,' " yet he represented otherwise to the magistrate. 889 F.2d at 734. In the instant case, however, the officer-affiant was entirely straightforward about the anonymity of the caller, and there is no suggestion that he failed to disclose other relevant information to the issuing magistrate.
 
 
 18
 "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Leon, 468 U.S. at 921. As we noted in Baxter, suppression should be ordered only in " 'those unusual cases in which exclusion will further the purposes of the exclusionary rule.' " 889 F.2d at 734 (quoting Leon, 468 U.S. at 918). We do not find this to be one of those unusual cases. Accordingly, we hold that the district court properly applied the "good faith" exception to the exclusionary rule, and we therefore also conclude that the district court did not err in denying C.D. Johnson's motion to suppress.
 
 III. PAUL JOHNSON
 
 19
 Paul Johnson appeals his sentence on two grounds. First, he contends that the district court erred in refusing to allow him a two-level reduction in his offense level for his "minor" role in the offense, pursuant to U.S.S.G. § 3B1.2. Second, he contends that the district court abused its discretion in denying him probation, for which he was eligible under the Guidelines.
 
 
 20
 A. "Minor" participant reduction.
 
 
 21
 As we have noted, although Paul's plea agreement allowed him to plead guilty to the misdemeanor offense of conspiracy to possess marijuana, it also provided that his sentence was to be imposed under the Guidelines as though he were convicted of the felony conspiracy charge contained in Count One of the indictment.[4] The presentence report calculated Paul's offense level to be 8,[5] with a criminal history category of III. The guideline range was 6 to 12 months.
 
 
 22
 Paul argues that he should have received a reduction in his offense level under U.S.S.G. § 3B1.2(b), which provides that a "minor participant" should receive a two-level reduction.[6] The application notes to this section define a "minor participant" as follows:
 
 
 23
 3. For purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants[.]
 
 Background:
 
 24
 This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. The determination whether to apply [this section] involves a determination that is heavily dependent upon the facts of the particular case.
 
 
 25
 (emphasis supplied). Paul argues that he fits within this definition because his only function in connection with the marijuana-growing operation was the construction of the growing room. He contends that although he continued to live in his uncle C.D.'s house, his involvement in the operation was ended when construction of the room was completed.
 
 
 26
 Where a defendant seeks to establish facts that would lead to a sentence reduction under the Guidelines, he must prove those facts by a preponderance of the evidence. United States v. Rodriguez, 896 F.2d 1031, 1032 (6th Cir.1990). This court will not disturb the district court's determination of a defendant's role in the criminal activity unless it is clearly erroneous. United States v. Williams, 940 F.2d 176, 180 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991).
 
 
 27
 The presentence report indicates that before sentencing, Paul provided a written account of his offense in which he acknowledged installing the marijuana growing room in his uncle's house. At the sentencing hearing, Paul's counsel did not dispute the accuracy of the presentence report, but merely argued that a two-level reduction was appropriate because the facts suggested that Paul was a minor participant. The district court disagreed, noting that Paul's expertise had made it possible for the marijuana to be grown.
 
 
 28
 Paul Johnson has simply failed to establish the applicability of § 3B1.2(b). The district judge's remarks indicate that he found that Paul had not played a minor role in the offense because he "made it possible." We find no basis for disagreement with this characterization of his role in the offense. As we read the Guidelines, together with the application notes, Paul Johnson is not automatically less culpable simply because his uncle may have been more so; rather, his actions must be compared with those of the average participant in a marijuana-growing operation. In this case, the district court could easily have concluded that the offense would not have happened but for the application of Paul's expertise, which enabled his uncle to grow his plants in relative secrecy. Under the circumstances, we cannot conclude that the district court committed clear error in imposing the sentence without the requested reduction.
 
 
 29
 B. Failure to grant probation.
 
 
 30
 Under the Guidelines, Paul was eligible for probation. 18 U.S.C. § 3561(a); see U.S.S.G. § 5B1.1(a)(2) (authorizing, but not requiring, probation where minimum term specified in Sentencing Table is at least one but not more than six months). Although he concedes that his prior criminal record (which includes misdemeanors but no drug convictions) shows a history of irresponsible behavior, he nonetheless argues that the district court abused its discretion in failing to place him on probation because his acceptance of responsibility shows a "maturing process."
 
 
 31
 This Circuit has held that a defendant may only appeal (1) sentences imposed in violation of the law, (2) sentences imposed as a result of an incorrect application of the Guidelines, or (3) upward departures from the Guidelines. United States v. Smith, 918 F.2d 664, 667 (6th Cir.1990), cert. denied sub nom. Sargent v. United States, 111 S.Ct. 1088 (1991). The district court's sentence included a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and does not represent a departure from the Guidelines range. The district court was undoubtedly aware of the availability of probation as a sentencing option, but determined that incarceration was a more appropriate choice for this defendant and this particular offense. We find no basis for displacing the district court's choice of the greater of two equally permissible penalties.
 
 IV. CONCLUSION
 
 32
 For the foregoing reasons, we AFFIRM the district court's denial of C.D. Johnson's motion to suppress, and AFFIRM the sentence imposed on Paul Johnson.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 When questioned about her legal training, Maxwell testified that she relied upon "just common sense." However, the Court in Leon suggested that common sense is all that is required in order to satisfy the requirement that the issuing magistrate be capable of determining whether probable cause exists for a search. 462 U.S. at 235-36 ("many warrants are--quite properly ... issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings.")
 
 
 [2]
 We cannot agree with C.D. Johnson's characterization of officer Adamson's affidavit as being of the "bare bones" variety condemned in other cases. As we read Gates, an affidavit will be found deficient where it contains mere conclusions without supporting factual information:
 ... A sworn statement of an affiant that 'he has cause to suspect and does believe' that liquor illegally brought into the United States is located on certain premises will not do. Nathanson v. United States, 290 U.S. 41 (1933). An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in Nathanson failed to meet this requirement. An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate. Aguilar v. Texas, 378 U.S. 108 (1964). As in Nathanson, this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause.
 462 U.S. at 239. See also United States v. Barrington, 806 F.2d 529, 531-532 (5th Cir.1986) (affidavit which stated only that officer "received information from a confidential informant" who was "known to [the officer] and has provided information in the past that has led to arrest and convictions" found not to warrant application of Leon good faith exception). While the affidavit in this case is short on detail, it contains more than officer Adamson's mere conclusion that evidence of crime would be found on the Johnson property.
 
 
 [3]
 The court in Baxter, while finding the Leon exception to be inapplicable, nonetheless remanded the case for a determination of whether an "exigent circumstances" exception could be applied. 889 F.2d at 734
 
 
 [4]
 Such an arrangement is contemplated under the Sentencing Guidelines. See United States Sentencing Commission, Guidelines Manual (hereinafter "U.S.S.G."), § 1B1.2(a) (providing that the sentencing court is to use Guideline section most applicable to offense of conviction, except where plea agreement contains a written stipulation establishing a more serious offense than the offense of conviction)
 
 
 [5]
 The original offense level was 10, pursuant to U.S.S.G. § 2D1.1(c)(17), with a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a))
 
 
 [6]
 Had Paul received the requested reduction for his role in the offense, the guideline range would have been two to eight months